## The People on the relation of Charles F. Harrington v. Hazzard P. Wands.

*Practice in supreme court: Order of argument in mandamus causes.* Where, in mandamus causes, the relator formally demurs to the answer of the respondent, the former has the affirmative, and is entitled to open and close the argument on the hearing.

*Constitution (Art. IV., §§ 20 and 25) construed: Statute (S. L. 1863, p. 30) construed.* An act of the legislature (S. L. 1863, p. 30) which is entitled "An act to amend sections eighteen and nineteen of an act entitled, etc." [reciting the title of the act designed to be amended, fully and correctly], which re-enacts at length the two specified sections as amended, and contains no object not embraced in the title of the original act, and where the title of such original act is properly framed, according to the constitutional requirements, does not infringe § *20 or* § *25 of Art. IV. of the Constitution* of this state, which provide that "No law shall embrace more than one object, which shall be expressed in its title," and that "No law shall be revised, altered or amended by reference to its title only; but the act revised, and the section or sections of the act altered or amended, shall be re-enacted and published at length."

These sections do not go to the extent of requiring that no act shall have any *operation* further than the title actually expresses, nor that an amending act can only alter the legal operation of such provisions as are re-enacted at length.—*People v. Mahaney, 13 Mich., 481; Underwood v. McDuffee, 15 Mich., 361.*

*Removal of county seat.* Under the statute (Comp. L., Chap. 10) relating to the removal of county seats, as amended by the act of 1868 (S. L. 1863, p. 30), a two-thirds vote of the board of supervisors is not necessary to complete the measures for a change of seat after an election by the people has been carried on the proposition to remove, where such proposition has originally received such two-thirds vote, and has been properly submitted to the electors. A majority vote of an acting quorum is sufficient.

The fact that the proceedings for the removal in question were instituted while a movement was in progress for a removal to another place, and were pushed to a popular vote after the electors had decided in favor of the removal to the latter place, but before the change thereto was in fact carried out, does not render them invalid.

The power to remove or change a county seat to a specified place is not tempo_ rarily exhausted or suspended by the pendency of a proposal to remove to another place.

The power to propose a removal is left in the discretion of the board of supervisors, qualified only by the requirement that two-thirds of them shall concur in the proposal; and the power of the electors to decide is consequent upon the power of the supervisors to propose.

The validity of the proceedings to remove was not affected by any decision for or against the location at another place, or by any omission to state from what place it would be removed, or by any uncertainty as to the place where it was then legally established.

*Heard July 7.    Decided October 4.*

Application for mandamus.

The relator was prosecuting attorney, and the respondent

the county clerk of St. Clair county. The facts are sufficiently set forth in the opinion.

*Ashley Pond*, for respondent, shows cause and claims the right to open the argument.

*E. W. Meddaugh*, for the relator, demurs to the answer and claims the right to open the argument.

*G. V. N. Lothrop*, for respondent:—The practice has been for the party showing cause, to open.

THE CHIEF JUSTICE:—These cases have sometimes been heard upon the facts stated in the papers, as upon a hearing in chancery upon bill and answer. But we suppose that when a demurrer is formally made, the party demurring has the affirmative.

*Meddaugh & Driggs* and *C. I. Walker*, for the relator.

*Newberry, Pond & Brown* and *G. V. N. Lothrop*, for respondent.

GRAVES, J.

This is a petition for a mandamus, but the final purpose of the application is to settle an unhappy controversy which has grown out of movements to change and re-locate the county seat of St. Clair county. It appears that for about fifty years the seat had continued at St. Clair, when, and in October, 1869, the board of supervisors submitted to the electors a proposition for its removal to Smith's Creek, and which proposition was carried at the spring election of 1870, by a majority of votes; that in October following, the board adopted such measures as were requisite for the change, and provided that it should be made and take effect on the first day of February, 1871, but which time was extended, at a subsequent session, to September 1, 1871. It

also appears that while these proceedings were going on, namely, in October, 1870, the board submitted a new proposition for the removal of the seat to Port Huron, and that this proposition received a majority of votes at the spring election of 1871; that the board, at a session on the 7th of June, 1871, ascertained and declared the result of this last vote, declared that the county seat should be at Port Huron from and after that day, designated thereat certain rooms and buildings for county offices and records, and ordered the removal of the records accordingly. It further appears that these several proceedings of the board, on the 7th of June, 1871, were supported by a majority of a quorum, but by less than two-thirds of all the members elected and less than two-thirds of the members voting. The movement for the change to Port Huron was initiated and carried on to its final issue without any formal recision by the board of any of the steps taken for the location at Smith's Creek, although, as is seen, some of the measures belonging to both movements, were carried on *pari passu.*

This somewhat incongruous action has naturally occasioned different and opposing opinions among the people and county officers respecting the legal effect of the disagreeing operations. On the one side, it is claimed that the proceedings by the board and the vote of the electors have established the seat at Port Huron, while on the other it is urged that several of the steps taken for that purpose, and essential therefor, were in themselves invalid, and that the attempt to effect a change to Port Huron was, in consequence of what was done to transfer the seat to Smith's Creek, irregular and unwarranted by law.

Of this latter opinion is the respondent. He maintains, in the first place, that the law regulating the subject, required a vote of two-thirds of all the supervisors elected, to validate the measures of the board of the 7th of June,

1871, and in support of this view, his counsel have inge-
niously argued that *section 17*, and some prior provisions of
the original act (*Comp. L., Ch. 10*), as passed and approved,
plainly required it, and that the act of 1863 (*Sess. L. 1863,
p. 30*), which by its title only professed to amend *sections
18 and 19*, cannot be held to have so changed the law as
to authorize the board to take the action of the 7th of
June by a smaller vote than two-thirds of the members
elected, without making it alter, by implication, other parts
of the original act not re-enacted, and likewise embrace
objects not expressed in the title, and consequently without
giving it a scope at once fatal to its own validity.—*Constitu-
tion, Art. IV.*, §§ *20, 25*. Whether or not the construction
thus claimed for the original act as it came from the legislature
is sound, we need not consider, because we think that neither
the validity nor the necessary construction of the second act
is affected by the clauses of the constitution alluded to, and
are likewise of opinion that the former, after its amendment
by the latter, very clearly authorized the board to ascertain
and declare the vote of the electors and pass the orders
of the 7th of June by a majority of a quorum.

The act of 1863 was entitled "An act to amend sections
eighteen and nineteen of an act entitled 'An act to define
the powers and duties of the board of supervisors of the
several counties, and to confer upon them certain local,
administrative and legislative powers,' approved April
eighth, eighteen hundred and fifty-one, said sections being
sections three hundred and fifty-two and three hundred and
fifty-three of the compiled laws."

The title of the original act was thus fully and correctly
recited, and the two specified sections as amended were
re-enacted at length. They contain no object not embraced in
the title of the original act, and the title of that act is framed
in substantial accordance with the clause of the constitution

HARRINGTON *v.* WANDS.

which delineates the legislative power on the subject to which the act relates, and indicates the purpose to be attained by legislation (*Art. IV.*, § *38*), and as the amending act stated its object to be the amendment of the two sections, and embraced no object not expressed in the title of the act to be amended, we think no question properly arises on the title. If we were to hold that no act can have any *operation* farther than the title actually expresses, we should outrun the constitution, unsettle much of the legislation of the last twenty years, and throw an obstacle in the path of future legislation which no human wisdom could overcome.

The next argument, based on positive constitutional requirements, is also untenable. It assumes that an amending act can only alter the legal operation of such provisions as are re-enacted at length, and hence that no amendment or change of a statute by implication has been legally possible since the adoption of our present constitution. The objections to this position are so many and obvious, and rest upon reasons so eminently practical, that we deem it needless to discuss it. My brother Campbell alluded to it in *Underwood v. McDuffee, 15 Mich., 361,* and my brother Cooley considered it in *The People v. Mahaney, 13 Mich., 481.* The views expressed in these cases can be made no clearer by expansion or repetition, and as they appear to rest upon satisfactory grounds, and are pertinent to the question, they may well be considered as forming our answer to the argument now advanced.

Being satisfied that the act of 1863 is not environed by the difficulties supposed, we are next to consider its operation, as parcel of the original act, in respect to the majority required to complete the measures for a change of seat after an election, on the proposition to remove, has been carried.

Upon this question we think there is no room for doubt. The law literally and expressly declares that in case the

result of the vote by the electors is in favor of removal, the *board shall* provide for such removal within a year after the result is ascertained and determined, and *shall* remove the seat as soon as suitable buildings· are provided, and *shall* enter upon the records the time when the change is to be deemed to have taken place, and that from that time the place so designated *shall* be the county seat. Neither the terms of the law nor the subject-matter imply that the result of the vote by the electors need be, or ought to be, ascertained and declared by more than a quorum acting by simple majority. The language of the law is so plain upon this point as nearly to forbid discussion.

The electors having passed upon the question of removal and decided in favor of .it, the statute imperatively requires the board to take the action necessary to carry out the public will as expressed by the popular vote; and there is nothing in the nature of the duty to ascertain and declare the event of the election, or in the part of the statute applicable to that duty, which in the least indicates the necessity or propriety of the concurrence of two-thirds of the members elect; and as the vote of the electors is binding upon the board, and, until impaired by another election, excludes all discretion in the latter upon the question of change or no change, we discover nothing in the nature of the duties enjoined upon the board for the purpose of carrying into effect the decision of the electors, which suggests the necessity of requiring the concurrence of two-thirds of the supervisors.

A further objection to the validity of the proceedings for the removal to Port Huron is that they were instituted while the movement was in progress for the change to Smith's Creek, and were pushed to a popular vote after the , electors had decided in favor of the latter place, but before the change thereto was in fact carried out. The general

grounds upon which this objection was based were understood to be that the power to remove was for the time exhausted by what had occurred to effect a change to Smith's Creek, and that until the change voted· to that place was completed there was no authority to initiate or prosecute measures for a location elsewhere; that if the board were not confined to one proposition at a time, a door would be opened to many disturbing and confusing elements which the policy of the law would avoid; that different proposals would engage public attention at the same time; that improper combinations and dishonest arts would be resorted to, and numerous local considerations opposed to a wise or intelligent result be introduced; and that as a consequence the vote of the electors, which the law intended should manifest their distinct, deliberate and sober judgment, would be perverted from its purpose and turned into an agency of mischief.

We feel the great force of some of these reasons, but upon reflection we think they cannot avail to prevent the supervisors from proposing, in their discretion, to locate the county seat at one place, or the electors from deciding on it while a proposal is pending to locate it at another. There is no language in the constitution or any statute which implies that the power to remove or change a county seat is temporarily exhausted or suspended by a single exercise, whether completed or commenced only. The only conditions imposed by the constitution are, that the new site shall be designated by two-thirds of the board of supervisors, and the selection so made be sanctioned by a majority of the electors voting; and the statute gives the course of proceedings "whenever" it is proposed to remove the seat. The law appears to contemplate an uninterrupted continuance of the power, and an ability in the

supervisors to propose a change, and in the electors to vote on it, whenever the board judge it to be necessary. The authority to take measures for a change, is not made subject to the condition that no proceedings for a different change are in progress. But the power to begin is only qualified by the requirement that two thirds of the supervisors shall concur, and the power of the electors to decide is consequent upon the power of the supervisors to propose. These regulations as to the exercise of the power are of some importance in their tendency to show that no other qualifications of the right were designed, and their force in this regard is increased when the inference to which they lead is seen to accord with other reasons favoring the same result. In looking at the subject, no one can fail to perceive that in a new and rapidly growing commonwealth the reasons and occasions for changing county seats would naturally forbid a rule absolutely preventing a change for a considerable period, whatever the emergency.

It was foreseen here that as the new counties should fill up, the centers of population and business would vary, and the means of intercommunication grow and shift, and that the fixed and unalterable arrangements adapted to old and settled communities would be unsuitable. Hence, the power to move the county seat was left with the supervisors and electors, to be exercised as often as the former should think needful. We need not remark that the power ought not to be capriciously used. We know that, like all power, it is open to abuse. But it is confided to the electors of the county, who elect the supervisors, and who may therefore be expected to consult the interests of the county. Besides, the electors themselves act directly by their votes. While the power to multiply pending propositions may be unworthily or unwisely exercised, we cannot declare that it does

not exist, and that the board and their constituents may not try the question of a change of seat whenever they desire to do so.

Entertaining this opinion on the question of power, the evils anticipated from multiplied propositions must be left to those correctives which the virtue and intelligence of the electors may furnish. A little consideration, perhaps, will show that the dangers apprehended cannot be so great as the heats of the present controversy have caused to be conjectured. At all events, we may doubt whether they are likely to be greater than those which may flow from other practices in our system which are considered wise and judicious,—whether the requirement of a popular vote to validate a general banking law with all its varied terms and provisions, whether a vote upon whatever amendments to the constitution may be proposed, or upon a whole constitution when submitted, may not involve all the inconveniences and mishaps predicted at the bar.

But, be this as it may, the people, by the frame of their organic law, have assumed that they may safely exercise these functions, and this assumption we do not presume to question. We think it must remain with the board, under their responsibility to their constituents, to determine whether one proposition may be wisely, justly and prudently left to the electors before a former one has been fully executed, and that it is not a question of power to be decided by the courts.

Whether the county seat was at St. Clair or at Smith's Creek when the change to Port Huron was made, is a question of no practical consequence, since we think the validity of the proceedings to place it at Port Huron was not affected by any decision for or against the location at Smith's Creek, or any omission to state from

23 MICH.—50.

what place it would be removed, or by any uncertainty as to the place where the county seat was legally established or legally required to be.

*Mandamus* ordered accordingly.

The other Justices concurred.