# Lorenzo B. Swartwout v. The Michigan Air Line Railroad Company.

*Railroad company: Subscriptions: Regularity of organization.* In an action by a railroad company against a corporator for an unpaid balance of his subscription, questions of the regularity merely, of the organization of the company cannot be raised where it appears that it is a corporation *de facto*, proceeding in the performance of corporate functions, holding meetings, raising and expending money, and constructing its road without any interference of the state authorities, and that the public are dealing with it on the supposition that it is a corporation.

*Organization of corporation: Regularity of proceedings.* In the case of a company organized under a special charter, proof of the charter and of user under it is sufficient to establish a *prima facie* right in the plaintiff to sue; and this *prima facie* case an individual could not dispute in an action where the question comes up collaterally, and where the state, as the party chiefly concerned, cannot be heard by its counsel; and the ruling should be the same where an attempt has been made to organize a corporation under a general law, and the question is one of exact regularity and strict compliance with the law.

*Corporation de facto: Estoppel.* In the case of the associates in a corporation *de facto*, and those who have had dealings with it, there is a mutual estoppel resting upon broad grounds of right, justice and equity, which prevents the former from denying, and the latter from disputing, the incorporation.

*Subscriptions to stock: Conditions precedent.* A railroad company, although a corporation *de facto* and entitled as such to maintain actions, cannot recover upon subscriptions to its stock, without showing performance of all those acts which are made by the statute conditions precedent.

*Constitutional law: Title of statute.* The amendatory act of 1867 (*Sess. L., 1867, p. 107, § 66*) to the general railroad law, is not unconstitutional for the reason that its object is not sufficiently expressed in the title. Although the title is not as specific as might be desirable, it cannot be said that it does not express the object of the law.

*Constitutional law: Amendments by implication.* A statute which purports to add a new section to a prior statute may, by implication, amend other sections of the original act without violating *Art. IV., § 25* of our constitution, requiring the sections amended to be re-enacted and published at length.

*Construction of statute: Railroads: Divisions for construction: Subscriptions to stock.* A statute is to be so construed, if possible, as to give effect to all its provisions, and to make them all harmonious. A railroad company is authorized by the general law as amended by the act of 1867, to proceed in the construction of a division of its line of not less than fifteen consecutive miles, and to collect the subscriptions made along the same, so soon as the requisite six thousand dollars per mile is obtained of subscriptions which are assessable for the construction of such division, and officers are duly chosen and the division designated.

*Statute construed: Municipal aid to railroads.* Such municipal aid as should be voted was intended by said act to be reckoned as a part of the six thousand dollars per mile; and the fact that such aid has since been held void by this court cannot affect the construction of that act.

SWARTWOUT *v.* MICHIGAN AIR LINE R. R. CO.

*Subscriptions to stock of railroad: Assessments: Divisions for construction.* For the purposes of an assessment upon subscriptions to the stock of a railroad company, either the road must be regarded as an entirety or the separate division set apart for construction must be considered and proceeded with by itself as a whole.

    An action for an assessment upon such subscription cannot be maintained without proof that the necessary subscriptions had been obtained between the two *termini*, or within the required distance from them, of the division designated and set apart.

*Designation of division of railroad for construction: Commissioners: Directors.* The board of directors, and not the commissioners designated to receive subscriptions to stock, are the proper authority to set apart a division of a railroad for construction; but the fact that the commissioners assumed to take such action, which was merely void, is of no consequence when the proper proceedings are afterwards taken by the directors.

*Action for assessment upon subscription to stock: Defense.* It is no defense to an action for an assessment upon subscriptions to stock, that stock has been awarded by the commissioners to persons whose names were not on the stock book, or to those who had not actually paid in the required five per cent. on subscribing; one who has received what he subscribed for, cannot complain of an award to those who could not have compelled it.

*Consolidation: Matter in abatement: Plea.* It does not defeat such an action, that pending it the plaintiff consolidated with another company. The cause of action did not die but passed to the new company, and this objection, if valid in any form, should be considered matter in abatement merely, and should have been pleaded accordingly.

*Contract against public policy.* An arrangement, between the officers of a railroad company and a portion of its subscribers, that if the town in which they reside voted a certain amount of municipal aid, such subscribers upon paying a certain percentage of their subscription should be released from the balance, being one in effect to release a portion of the subscriptions without authority of law, is void.

*Conditional subscription: Condition construed.* A subscription to stock of a railroad, made upon condition "that the line of the road shall be located and built within one mile of the post-office, in the village of Three Rivers," is assessable when the road is finally located within one mile thereof, although not yet constructed.

*Charge to the jury: Statute construed.* It is no violation of the statute (*1 Sess. L., 1869, p. 113*), requiring the whole charge to the jury, to be in writing, that the judge read to the jury, without making it a part of his written charge, a section of the general railroad law of the state. The party is as fully protected as if the section of the statute had been copied into the charge.

*Heard January 11. Decided April 3.*

Error to St. Joseph Circuit.

*Severens & Burrows* and *Ashley Pond*, for plaintiff in error.

*Mason & Melendy* and *George V. N. Lothrop*, for defendant in error.

Cooley, J.

Swartwout was a subscriber to the capital stock of the Grand Trunk Railway of Michigan, a corporation afterwards consolidated with another, under the name of the Michigan Air Line Railroad Company. Having paid thirty-five per cent. of his subscription, he refused to pay the balance, and suit was brought for its recovery. In the circuit court the plaintiff has succeeded in obtaining judgment, and Swartwout has brought the record to this court by writ of error, assigning various errors in the rulings below.

Many of the alleged errors relate to the original organization of the Grand Trunk Railway Company under the general railroad law of the state. It is insisted, among other things, that by the articles of association one of the proposed *termini* of the road is not indicated with sufficient precision; that the meeting of stockholders for the election of directors and the permanent organization of the company, was called before the requisite amount of stock had been subscribed; that the commissioners in determining upon the call for such meeting, which could only be made after a certain amount of subscriptions had been obtained, reckoned as a part of such amount certain sums unlawfully voted by municipalities, and that the court erred in not allowing the defense to show, by way of establishing the failure to effect a legal organization, that some of the subscriptions to the stock were conditional, and that on some the five per cent. required by law to be paid on subscribing was not paid. It is also objected that the proceedings to effect the consolidation of the Grand Trunk Railway with another organization, before referred to, were ineffectual by reason of certain irregularities, and that the circuit court erred in holding otherwise.

Before the suit below was brought, the railroad company

had held meetings as well of its directors as of its stockholders; had made assessments upon the subscriptions to its capital stock and collected them in part; had assigned a portion of its road for construction, and proceeded to construct the same; and had done various other acts as a corporation, and expended large amounts of money in furtherance of the ostensible object for which the company was formed. Some of these things were done before, and some after the consolidation; and while in the proceedings of the associates there was every evidence that they intended to carry into effect the purpose indicated by their articles, we are not informed that the public authorities had interrfered to call in question the validity of their assumption of corporate powers, or to take away any such powers as they might have possessed on any charge, that if originally assumed in conformity with law, they had since been forfeited.

Under these circumstances, I think the circuit judge was correct in holding that no question of the regularity of the organization of the Grand Trunk railway, or of its subsequent consolidation, could be raised by the defendant in this suit. It will be seen that the associates, under a statute which authorized them to incorporate themselves, had taken steps for that purpose; had assumed that the purpose was accomplished, and had for some time exercised corporate powers. The defendant was one of their number; he had acted with the rest in laying claim to corporate authority, and he had made payments on the assumption that the claim was well based. Important acts, extending over a long line of territory, had been done upon this assumption, and with acquiesence on the part of the public authorities. The original associates, together with those with whom they became united by the consolidation, were unquestionably a corporation *de facto,* whether they were such *de jure*

or not; and as a corporation, in view of the facts in proof, it is reasonable to presume they had contracted debts and incurred obligations. The organization would be trusted in reliance upon its being the corporation it assumed to be; and parties dealing with it could not be expected to assume that the associates would be allowed to claim corporate rights for the purposes of constructing their road, and then to deny corporate existence for the purpose of avoiding the subscriptions, which were the sole consideration for their authority from the state to construct it. Where there is thus a corporation *de facto*, with no want of legislative power to its due and legal existence; where it is proceeding in the performance of corporate functions, and the public are dealing with it on the supposition that it is what it professes to be, and the questions suggested are only whether there has been exact regularity and strict compliance with the provisions of the law relating to incorporation; it is plainly a dictate alike of justice and of public policy, that in controversies between the *de facto* corporation and those who have entered into contract relations with it, as corporators or otherwise, that such questions should not be suffered to be raised.

The injustice of requiring of every man who may deal with the associates in reliance upon the corporate personality, that he should at his peril take notice of all failures on their part in a strict compliance with the law, and that he should raise questions of usurpation of corporate authority which the state waives or passes by without notice, is too manifest to require comment. But apart from its injustice, it is obvious that all questions of regularity in the proceedings on the part of the associates in taking upon themselves corporate functions purporting to emanate from the sovereignty, are questions which concern the state rather than individuals, and should only be raised in a pro-

24 MICH.—50.

ceeding to which the state has seen fit to make itself a party.

The trial of an issue on a complaint by the state, of usurpation, would determine the matter finally, but the trial of the same issue in a suit with an individual would settle nothing for future controversies, but the same question might arise again and again, and perhaps be decided differently on different trials.

This point would have been open to no controversy whatever, had the plaintiff been organized under a special charter, and had we had no constitutional provision forbidding the granting of such charters. Proof of the charter and of *user* under it, would have been sufficient to establish a *prima facie* right in the plaintiff to sue.—*Snow v. Peacock, 2 C. & P., 215; Dutchess Manuf. Co. v. Davis, 14 Johns., 245; Williams v. Bank of Michigan, 7 Wend., 540; Penobscott, etc. R. R. Co. v. Dunn, 39 Me., 587; Jameson v. People, 16 Ill., 257; Cahill v. Kalamazoo Ins. Co., 2 Doug., 124; Way v. Billings, 2 Mich., 397; Wood v. Coosa, etc. R. R. Co., 32 Geo., 273; Baker v. Admr. of Backus, 32 Ill., 79; Cochran v. Arnold, 58 Penn. St., 399; Rondell v. Fay, 32 Cal., 354; A. & A. on Corp., 354.* And this *prima facie* case an individual would not be suffered to dispute, for the reason already suggested, that the question is not to be tried in a suit where it would only arise collaterally, and where the state, as the party chiefly concerned, could not be heard by its counsel.

As was well said by Mr. Justice Bronson in a similar case: "It is unnecessary to inquire what may be the rights of the people in relation to this corporation, or as against the individuals who were concerned in getting it up and setting it in motion. The defendant does not represent the sovereign power, and has nothing to do with the question whether the company should be dissolved. So long as the

state does not interfere, the company may sue, or do any other lawful act, whatever sins may have been committed in bringing the body into existence."—*McFarlan v. Triton Ins. Co., 4 Denio, 397.*

But both in reason and on authority the ruling should be the same where an attempt has been made to organize a corporation under a general law permitting it. If due authority existed for the organization, and the question is one of regularity merely, " the rule established by law as well as reason is, that parties recognizing the existence of corporations by dealing with them, have no right to object to any irregularity in their organization, or any subsequent abuse of their powers, not connected with such dealing. As long as these are overlooked or tolerated by the state, it is not for individuals to call them in question."—Selden, J., in *Methodist Ep. Union Church v. Pickett, 19 N. Y., 485.* " Any other rule," as has been justly said in another New York case, " must be fraught with serious consequences, and great public mischief. Most of the persons who subscribe in good faith for the stock do not examine to see whether all the requirements of the statute in the organization of the corporation have been complied with; and if they did, would not probably discover defects like those now pointed out. The stock is sold in market from hand to hand, without any such examination. The corporation may carry on its business for years, and its stock have entirely changed hands, when its property may be destroyed by a trespasser, and in an action against him, in the name of the corporation, his only defense: 'You are not legally a corporation by reason of a defect in your constitution,' would, upon the doctrine contended for by the defendant, be successful." " The error," as is further said in the same case, " is in not recognizing the distinction between what is sufficient to constitute a corporation *de facto,* and what is necessary to

constitute one *de jure*; and how and by whom a corporation *de facto* may be shown not to be a corporation *de jure.* The state alone can take advantage of a defect in the constitution of a corporation like the one in this case. In its action it will be governed by public policy and considerations."—*Buffalo & Allegany R. R. Co. v. Cary, 26 N. Y.,* 77-8. In the case of the associates in the corporation *de facto,* and those who have had dealings with it, there is a mutual estoppel, resting upon broad grounds of right, justice and equity. The first class are not suffered to deny their incorporation, nor the second to dispute the validity of their assertions of corporate powers.—*Ewing v. Robeson, 15 Ind., 29; Armstrong v. Harvey, 11 Ohio St., 527; Brouwer v. Appleby, 1 Sandf., 158; Methodist Ep. Union Church v. Pickett, 19 N. Y., 485.* The state itself, it has been held in this state, may be precluded by its action or neglect from denying the incorporation; *People v. Maynard, 15 Mich., 463;* or from taking advantage of a forfeiture after long acquiescence.—*People v. Oakland County Bank, 1 Doug. (Mich.), 282.*

In further illustration of these views, reference is made to *Smith v. Heidecker, 39 Mo., 157; Low v. Railroad, 45 N. H., 378; Heaston v. Cincinnati, etc. R. R. Co., 16 Ind., 275; Society, etc. v. Commonwealth, 52 Penn. St., 125; Goodrich v. Reynolds, 31 Ill., 490.*

But although the plaintiff below was a corporation *de facto,* and entitled to maintain actions as such, it may still be true that it was not authorized to recover upon subscriptions to its corporate stock. For this purpose it is not sufficient that its corporate powers are, under the circumstances, to be taken as conceded by the subscribers. The statute has pointed out certain steps which are to be taken by the corporation, and has made these conditions precedent to its right to enforce the obligations of its

members. Performance of these, the corporators have the right to insist upon; and the plaintiff was necessitated to show such performance before recovery could have been had in this suit. The first and most important of these is, that subscriptions to a certain amount should be obtained to the capital stock. The general railroad law originally required that these subscriptions, including any municipal aid voted to the road, should not be less than six thousand dollars a mile for the whole length of the road. This amount was not claimed to have been obtained; but the plaintiff relied upon an amendment made to the law in 1867, and which was claimed to have been complied with. The amendment was by the addition of a new section as follows:

"Sec. 66. Whenever any railroad company shall have filed its articles of association, as provided in the act to which this act is amendatory, and obtained sufficient subscription to its capital stock, including any municipal aid actually voted in its behalf by virtue of any law of this state, to construct a division of its line of not less than fifteen consecutive miles, at the rate of six thousand dollars per mile, such company shall be authorized to call a meeting of its stockholders, and elect directors of said company, in the manner prescribed in sections four and five of the act to which this act is amendatory, and said directors may proceed to designate a division of not less than fifteen consecutive miles of the line of said company for construction; and said company shall have full power and authority to construct, operate and maintain a railroad upon the division of said company's line which may have been thus designated as aforesaid, and for that purpose shall have ample power to assess and enforce collection of its capital stock subscribed by persons residing along or collateral to, or within two miles of either of the termini of such designated

division of said company's line, in the manner prescribed
by the act to which this act is amendatory, and to receive
and avail itself of the benefit of any aid that may have
been or may hereafter be voted in its behalf, by virtue of
any law of this state, by any municipality along, adjoining
or coterminous with such designated division of its line.
But such company, for the purpose of constructing such
designated division, shall not make collections from sub-
scribers not residing along, collateral to or within two miles
of either of the termini of such designated portion of such
company's line, nor to receive the aid voted or to be voted
in its behalf by municipalities not situated along, adjoining
or coterminous with such designated division, except by
express agreement.   And said company from time to time
may continue the construction of its line by designating
other divisions of not less than five consecutive miles each,
and may construct, operate and maintain a railroad upon
such further designated division or divisions in the same
manner and with the same rights, privileges and limitations
hereinbefore specified: *Provided*, That in case of the con-
struction by such company of a division of its line of road,
as hereinbefore provided, it shall not, by reason of inability
to construct any additional portion of its road, lose or for-
feit any of its corporate rights, franchises or privileges:
*And provided further*, That all subscribers and aiding
municipalities shall be liable according to the terms of their
subscriptions or votes, whenever the construction of the
entire line of road of said company shall have been entered
upon by said company."—*Sess. L. 1867 p. 107.*

It was objected by the defendant that this amendatory
act was ineffectual, because its object was not sufficiently
expressed in the title.   The title is: "An act to amend an
act entitled, 'An act to provide for the incorporation of
railroad companies,' approved February 12, 1855, being chap-

ter 67 of the Compiled Laws of 1857, by adding a new section thereto." Although this is not as specific as might be desirable, we cannot say it does not express the object of the law. The new section contains nothing which is not germain to the original act, and if the title to that was sufficient, we do not very clearly perceive why the title here in question, and which purports to add something by way of amendment, is not also sufficient. The one is no more general than the other.

It is further objected that the section added cannot have effect, because inconsistent with other sections of the original act, which it does not purport to amend, and which, nevertheless, must have an amended operation by implication, to enable any effect whatever to be given to the section added. The position is, that a new statute which only purports to add a new section cannot have the effect by implication to amend sections of the original act without coming directly in conflict with § 25, of *Art. IV.* of the constitution, which requires the sections amended to be re-enacted and published at length. But we have heretofore decided that statutes which amend others by implication are not within the contemplation of that section.—*People v. Mahaney, 13 Mich., 482.* And in a more recent case we have applied this decision to an act which presents the point in the same manner in which it arises here.—*People v. Wands, 23 Mich., 385.* I consider these cases as fully disposing of the point here referred to.

How far the original railroad law is impliedly amended by the act of 1867, I do not deem it necessary to consider in this suit. The question here arises under the new section sixty-six; and if that is capable of enforcement, it is immaterial to the present suit whether any difficulty has been introduced in cases in which the company is not undertaking to avail itself of the provisions of that section. In

any case a statute is to be so construed as, if possible, to give effect to all its provisions; and if there is any difficulty in doing that in the case of this statute, I have been unable to discover any, where the corporation is proceeding under this section sixty-six. Reading this in connection with the previous sections, and assuming, as we must, that they were intended to be harmonious, I have no doubt the company was fully empowered to proceed in the construction of a division of its line of not less than fifteen consecutive miles, and to collect the subscriptions made along the same, so soon as the requisite six thousand dollars per mile had been subscribed which was assessable for the construction of such division, and officers had been duly chosen and the division designated. Power to do this was certainly meant to be conferred, and I think has been, in plain terms.

Acting under this authority, the company appears to have chosen officers, and to have designated a division of the road for construction. It is shown, however, that the sum of six thousand dollars per mile was made up in part of municipal subscriptions, and these being void, it is insisted that the designation of a division was also void. The legislature, it is said, intended that six thousand dollars per mile of legal subscriptions should be obtained before the road should be begun. We are compelled, however, to find the legislative intent in the language employed to express it; and from that language there cannot be the least doubt that the intent was to reckon as a part of the six thousand dollars per mile such municipal aid as should be voted. That they expected that aid to be available, is not, I think, a fact that can affect the case. They had a right to prescribe such conditions as they pleased to the complete exercise of the corporate powers; and if those prescribed proved of no value, we cannot hold their action ineffectual because they failed to prescribe others. We must be governed by what

the legislature say, and cannot inquire into the expectations which may be supposed to have induced them to say it. What they say is clear; their expectations we shall not undertake to speculate upon.

A further objection made on behalf of the defendant in the court below, appears to me to be one of more difficulty. By the amendatory act of 1867, the company was authorized, when subscriptions, etc., sufficient to construct a division of its line of not less than fifteen consecutive miles, at the rate of six thousand dollars a mile, had been obtained, to proceed to elect directors, and the directors might thereupon designate a division of not less than fifteen consecutive miles of the line of the company for construction, and assess and enforce collections of its capital stock subscribed by persons residing along, or collateral, or within two miles of either *terminus* of such designated division. The company having secured subscriptions and municipal votes to the amount of six thousand dollars a mile for that portion of their line between the city of Jackson and the west line of St. Joseph county, proceeded to designate that as a division for construction. If, then, they had ordered assessments upon the subscriptions to stock, made by persons residing along this division, or within two miles of its *termini*, without discrimination, they would have been strictly within the terms of the law. Instead of doing so, however, the directors proceeded to make of this division two subdivisions; the second of which extended from the west line of Tekonsha township, to the west line of St. Joseph county; and work was ordered to be commenced on this second subdivision, and an assessment of ten per cent. per month was made upon the subscriptions along the line thereof. It is upon this assessment that suit was brought against the defendant below.

24 MICH.—51.

Now the statute says nothing about subdivisions of divisions of the road, and apparently does not contemplate that any are to be made for the purposes of assessment upon stock. It authorizes *a division* to be set apart for construction, and assessments to be made thereon, but it does not authorize portions, less than a designated division, to be proceeded with by separate assessments upon the parties residing along or within two miles of it. If a division of fifteen miles can be subdivided once, it can be fifteen times, and each separate mile be covered by a separate assessment, irrespective of the amount subscribed along the same. Such a construction would defeat the manifest purpose of the statute, which plainly requires that before any person shall be compelled to make payment on his subscriptions, there shall be subscriptions, etc., either to the amount of six thousand dollars along the whole line, or to that amount along the particular portion, not less than fifteen miles, on or near which he resides, and the construction of which is ordered. The fact that subscriptions exist to an amount considerably exceeding six thousand dollars a mile between Jackson and the west line of Tekonsha, would not justify a division west of the point last named being set apart for construction and assessments, if the subscriptions along it, or within two miles of its *termini*, fell short of six thousand dollars a mile. For the purposes of an assessment either the road must be regarded as an entirety, or the separate division set apart for construction, must be considered and proceeded with by itself as a whole.

The division set apart for construction in this case, was that portion of the line lying between the west line of Tekonsha and the west line of St. Joseph county. Though called a subdivision, I am of opinion that this is immaterial, and that the setting it apart was sufficient if in fact

the necessary subscriptions had been obtained between the two *termini*, or within the required distance of them. But in the absence of any evidence that such was the fact, I think the court should have instructed the jury that this suit was not maintainable.

But as this difficulty may perhaps be obviated by a different showing on a new trial, or by a new assessment, it becomes necessary to consider some further questions which the record presents.

It is objected that the commissioners, designated in the articles of association to receive subscriptions to the capital stock of the Grand Trunk Railway Company of Michigan, had no authority to determine that the proper amount of subscriptions had been obtained for the construction of a division of the road of not less than fifteen consecutive miles, at the rate of six thousand dollars a mile, and thereupon to call a meeting to choose officers. It does not appear to me of importance in the present case whether they were or were not. The meeting was called and the officers were chosen, who were at least officers *de facto*. It must be conceded that the board of directors, and not the commissioners, are the authority to set apart a division for construction; and though the commissioners state, in their call for a meeting of stockholders to choose directors, that this setting apart had already taken place, the statement is of no importance. If the commissioners had assumed to take such action, it was merely void, and the proper proceedings appear to have been taken by the directors afterwards.

The question which is raised, whether stock was not awarded by the commissioners to persons whose names were not on the stock book, or to persons who had not actually paid in the required five per cent. on subscribing, is not one which is shown to concern the defendant. If one who

had duly subscribed and paid his five per cent. had been deprived of the benefit of his subscription by an award of his stock to other persons, he might justly claim the proper legal remedy; but one who has received what he subscribed for cannot complain of an award to those who could not have compelled it. If they accept the stock awarded to them, doubtless they are liable to the company therefor; and it was not claimed in this case, as I understand it, that the awards were colorable merely, or to persons who refuse to accept them.

It is also objected that this suit could not be maintained, because pending it, the plaintiff consolidated with another company, and thereby ceased to exist. *As, however, the* cause of action did not die, but passed to the new company, this, if a valid objection in any form, should be considered matter in abatement merely; and if so, it should have been pleaded *puis darrein.* If it had been so pleaded, perhaps the suit might have proceeded on the proper suggestion being made. But in *Hanna v. Cincinnati, etc., R. R. Co., 20 Ind., 30,* the court sustained the right of the original corporation to maintain suits on its subscriptions, notwithstanding a consolidation. The precise question raised here, namely, that the consolidated companies were no longer in being for the purposes of suits, is fully met by the decision in that case. It does not become necessary here to express an opinion whether that case was or was not correctly decided.

The defendant also claimed that if originally liable on his subscription, he was released therefrom by an arrangement under which, if the town in which he resided voted a certain amount of municipal aid, and the subscribers to stock paid thirty-five per centum of their subscriptions, they were to be discharged from liability upon the balance. The circuit judge held this arrangement to be ineffectual. The

sum agreed upon was voted, but the company never received the bonds, nor could they legally be issued. The arrangement made by the officers of the company was consequently one which was to release a portion of the subscriptions, without authority of law, and it was of course wholly void.

The defendant's subscription was made "upon condition that the line of the road shall be located and built within one mile of the post-office in the village of Three Rivers." The circuit judge charged the jury that he was assessable thereon when the road was *finally located* within one mile of said post-office, notwithstanding it was not yet constructed. This view of the subscription is supported by the case of *Chamberlain v. The Painesville & Hudson R. R. Co., 15 Ohio St., 225,* in which parties promised to pay the company certain sums "provided that said road is permanently located through the village of Chagrin Falls, or within one hundred and sixty rods of the High Falls, so-called, near A. C. Gardner's mill; and that a freight-house and depot be erected or built on the line of said road, within one hundred and sixty rods of said High Falls." The court was of opinion, in that case, that the only condition to the payment of the subscriptions, was the permanent location of the road; and that the clause regarding the freight-house and depot was to be looked upon as a stipulation merely, which the company undertook to perform at the appropriate time. I am inclined to think a similar construction was intended by the parties when the subscription, now under consideration, was made and received." When can a road be said to be "built" within one mile of a specified point which it is to pass? Is it when a piece a rod in length, or a mile, or any other given distance is constructed, though such fraction of the road may be unavailable for use, and of no possible value to the subscribers? Or is it only when the whole line is

constructed? If the first, then obviously the stipulation as a condition precedent is of little or no importance; and the subscription can scarcely be supposed to intend the entire completion of a long line like the one here proposed, when possibly the local advantage expected by the subscribers from the road, and which were stipulated for in the acceptance of these subscriptions, might be fully afforded by a division; as, for instance, by that portion of the road from Jackson to Niles. Subscriptions to the stock of a railroad company are usually expected to provide a fund to build with; that is what the statute contemplates; and if such were not the intent here, and the parties designed to make their promises conditional on the completion of the railroad, either as an entirety or for any given distance, it is scarcely probable that they would have left their stipulation so indefinite and so much open to conjecture. The permanent location of the road within a mile of the Three Rivers post-office would have furnished the company's assurance of their intention to build it there; and that assurance the subscribers were undoubtedly entitled to; but had it been their understanding that the sums subscribed were not to be available to the company for the purposes of a construction of their road, but payable only when the road was wholly completed, it is only reasonable to infer that they would have expressed that intent more clearly, and would have indicated with definiteness what stage the work should reach before their liability should become fixed. In considering the proper construction of the contract, it is to be borne in mind that the general law prescribes what shall be the obligation of parties upon their subscriptions to stock, and as a matter of public policy, the subscriptions it provides for are unconditional, in order that a proper and reliable fund may be provided, which can be made available for construction before the construction is

entered upon. When, therefore, a party claims that he has stipulated for exemption from the statutory liability, it is but reasonable to require that the stipulation be clear and free from reasonable doubt in its terms; for all intendments of law, must be against an intent that the contract which is prescribed alike by the statute and by public policy, should be modified beyond what is plainly expressed.

The only other error assigned, which it is deemed important to notice here, relates to the circuit judge having read to the jury the sixty-sixth section of the general railroad law without making it a part of his written charge. The statute of 1869 requires the whole charge to be in writing and filed.—*Sess. L. 1869, Vol. 1, p. 113.* The object of that statute is supposed to have been to hold the circuit judges to a more strict accountability, and to insure to parties the benefit of all legal exceptions.

The spirit of the statute appears to me to have been complied with in this case. The party is as fully protected as if the statute had been copied into the charge. If the jury were to take the charge with them to their rooms, it might be different; but when it is only to be filed, and there is proper reference in it to any statute read, I think it sufficient. Had something besides a general law of the state been thus referred to, perhaps the conclusion should have been different; but it appears to me that in this the judge committed no error.

For the error before pointed out, the judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.