GEORGE E. EVERNHAM v. CAROLINE HULIT.

1. The title of an act of the legislature will not supply defects or omissions in the enacting part, but may be resorted to to aid in ascertaining the legislative intent where the meaning is uncertain by reason of the use of general language of uncertain signification, or of words of doubtful import, especially since the legislature is required by constitutional provision to frame a title for every act, and to express in the title the object of the enactment.

2. An act of the legislature which does not purport to amend any prior act, and is, on its face, a perfect and complete act of legislation, is not within the interdict contained in art. IV., § 7, ¶ 4, of the constitution as amended, although by implication it alters and, in effect, amends the provision of another statute on the same subject.

3. The act entitled "A further supplement to an act entitled 'An act constituting courts for the trial of small causes,'" passed March 17th, 1882, (*Pamph. L., p.* 137,) applies to judgments recovered before justices of the peace in suits cognizable before a justice under the act to which it is a supplement, and to that extent is constitutional, although it is unconstitutional with respect to appeals in bastardy and desertion cases, for the reason that to that extent the object of the act is not expressed in its title.

On *certiorari* to Mercer Pleas.

Hulit, on the 21st of April, 1882, recovered a judgment against Evernham in the court for the trial of small causes, before Daniel Temple, a justice of the peace of the county of Mercer, in an action of debt.

Temple was a justice of the peace residing and holding his court in the city of Trenton. Evernham was a resident of the township of East Windsor, in said county.

In Trenton there is a District Court, established under the act of March 9th, 1877. *Rev., p.* 1301.

Evernham took an appeal to the Court of Common Pleas of the county of Mercer.

The Court of Common Pleas dismissed the appeal on the ground that, by the act of March 17th, 1882, (*Pamph. L., 'p.* 137,) the appeal could be taken only to the District Court.

Argued at November Term, 1882, before Justices DEPUE, VAN SYCKEL and REED.

For the plaintiff in *certiorari, A. S. Appleget.*

*Contra, J. T. Temple.*

The opinion of the court was delivered by

DEPUE, J. The statute drawn in question by this writ in its first section provides " that from any judgment which may be obtained before any justice of the peace or any police justice, in any city where a District Court or District Courts are established, in any bastardy or desertion actions, and from any judgments in all proceedings of a civil nature, in which such justice of the peace has or hereafter may have jurisdiction, either party may appeal only to the District Court of said city." *Pamph. L.* 1882, *p.* 138.

The plaintiff in *certiorari* insists, in the first place, that this act does not apply to cases cognizable before justices of the peace in the courts for the trial of small causes.

In the enacting clause the descriptive words are, "Any judgment which may be obtained before any justice of the peace * * * in any bastardy or desertion actions," and " any judgment in all proceedings of a civil nature, in which such justice of the peace has or may hereafter have jurisdiction."

The jurisdiction of a justice of the peace in suits " of a civil nature," such as is the suit against the plaintiff in *certiorari,* is conferred by the act entitled " An act constituting courts for the trial of small causes," approved March 27th, 1874; and by the procedure provided in that act, justices of the peace are authorized to hear and determine such suits and give judgment therein. The act in question is expressed by its title to be " A further supplement to an act entitled ' An act constituting courts for the trial of small causes ' (*Revision*), approved March twenty-seventh, one thousand eight hundred and seventy-four." Originally the title of an act of parlia-

ment was not read three times, as other parts were, but was framed by the clerk of the house in which the bill first passed, and proposed when the bill was to be sent from the one house to the other. *Barrington's Obs.* 403 ; *Dwarris on Stat.* 500. Consequently it became a doctrine of the English courts that the title was no part of the statute, and could not be resorted to for the purpose of construing its provisions. *Hunter* v. *Nockholds,* 1 *Macn. & G.* 640. And yet precedents are to be found in the English courts of references to the titles of acts of parliament to ascertain the object the legislature had in view in passing the act, and to aid in the construction of language of general or doubtful import. *Rex* v. *Gwenop,* 3 *T. R.* 133, 137 ; *Taylor* v. *Newman,* 4 *B. & S.* 89 ; *Johnson* v. *Upham,* 2 *E. & E.* 262 ; *Graves* v. *Ashford, L. R.,* 2 *C. P.* 417 ; *Wood* v. *Rowcliffe,* 6 *Hare* 183 ; *Bentley* v. *R. & K. Local Board,* 4 *Ch. Div.* 588. In *Stradling* v. *Morgan, Plowd.* 199, the title of the act is referred to as signifying the scope of the act. In *United* v. *Fisher,* 2 *Cranch* 358, 386, and *United States* v. *Palmer,* 3 *Wheat.* 610, 631, Chief Justice Marshall referred to the title of an act as being admissible, not to control plain words in the body of the act, but to assist in removing ambiguities ; and in *Hadden* v. *Collector,* 5 *Wall.* 107, it was held that the title of an act could not be used to extend or restrain any positive provisions contained in the body of the act, but might be resorted to where the meaning of these is doubtful.

The title of an act will not supply defects or omissions in the enacting part, but may be resorted to as an aid in construction to ascertain the legislative intent where the meaning is uncertain by reason of the use of general language of indefinite signification, or of words of doubtful import (1 *Kent* 460 ; *Sedg. Stat. Const.* 39 ; *Shaw* v. *Ruddin,* 9 *Ir. C. L. R.* 214; *Reg.* v. *Guardians of Mallow,* 12 *Id.* 35) ; especially where, as in this state, the legislature is required by constitutional provision to frame a title for every act, and to express in the title the object of the enactment. *Narzo* v. *Merchants' Ins. Co.,* 14

*Wis.* 295; *Dodd* v. *State,* 18 *Ind* 56, 62; *Conn. Ins. Co.* v. *Albert,* 39 *Mo.* 181, 183; *Cooley on Const. Lim.* 141.

The act of 1882 is unconstitutional with respect to appeals in bastardy and desertion cases, over which justices of the peace have no jurisdiction by force of the act creating courts for the trial of small causes, for the reason that to that extent the object of the act is not expressed in its title; but we think it is clear, as a matter of construction, that this act applies to judgments in suits of a civil nature given by justices of the peace under the jurisdiction granted to them under the act constituting courts for the trial of small causes. If there were any doubt on that subject arising from the indefiniteness of the language of the body of the act, it is removed by a refer- ence to its title.

The unconstitutional feature in this act, arising from the fact that the bastardy and desertion cases are embraced in it, can- not avail the plaintiff in *certiorari.* That part may be sepa- rated and eliminated from the act without impairing the residue. *Rader* v. *Township of Union,* 10 *Vroom* 509; *Peo- ple* v. *Briggs,* 50 *N. Y.* 553; *Sedg. Stat. Const.* 528. But it is insisted that the whole act is unconstitutional, as being in contravention of art. IV., § 7, ¶ 4, of the constitution, which provides that "no law shall be revived or amended by refer- ence to its title only, but the act revived or the section or sec- tions amended shall be inserted at length." The precise ground on which this contention was placed is that the act of 1882 is in effect an amendment of the first section of a sup- plement to the act constituting courts for the trial of small causes, passed April 12th, 1876, which gave an appeal to the Common Pleas from judgments obtained before a justice of the peace in all cases. *Rev., p.* 564, § 137. The contention is that such a change in the law could not be made without re-enacting this section of the act of 1876, and incorporating in it the provisions of the act of 1882.

A construction of this constitutional provision which would sustain the contention of the plaintiff in *certiorari* would lead to the most embarrassing results. It would be equivalent to

holding that the legislature can pass no act changing any part of the statute law in force in this state without re-enacting at length every section in the whole body of existing statutes that might be affected by the new legislation. Since the constitutional amendments went into effect in 1875, a considerable number of acts have been passed designed to simplify and make more efficacious the mode of making and collecting assessments for local improvements in the municipalities of this state. These were subjects specially provided for in sections contained in their several acts of incorporation. General acts have also been passed providing for the assessment, collection and lien of taxes—subjects specially provided for in sections incorporating cities, towns and townships, as well as in several parts of the general tax law of this state. In many instances provisions of this kind are contained in long sections in which it is usual to express and define the general powers of corporations. Sometimes they are distributed in appropriate places in different sections of the acts. If this constitutional provision has made it necessary to the validity of a new statute on the subject that every prior statute on the same subject which may be altered or modified should be inserted in it at length, it would be quite impossible to legislate at all on the subjects mentioned, or on kindred subjects; for a statute which would comply with such a requirement would probably be obnoxious to that other provision of the constitution, that every law should embrace but one object, and that object should be expressed in its title.

We think the constitutional provision in question neither requires nor admits of a construction of so broad a compass. It was not designed as a restriction of the power of the legislature to make laws. It relates only to the form in which the legislature shall exercise its functions as the law-making power in the state. The evils at which this class of constitutional provisions was aimed are well known. Acts repealing a sentence or part of a sentence of an existing statute, or amending it by inserting a sentence which, standing alone, either con-

veyed no .meaning or inadequately expressed the purpose it was intended to accomplish, and acts extending the provisions of statutes to a new class of subjects or persons by a simple reference to the title or to the numbers of the sections, were sometimes passed. Much vicious and unjust legislation was obtained in this way by covert means, and it was for the purpose of preventing incautious and fraudulent legislation, procured in this deceptive manner, that this constitutional provision and the other provision that " no act shall be passed which shall provide that any existing law or any part thereof shall be made or deemed a part of the act, or which shall enact that any existing law or any part thereof shall be applicable, except by inserting it in such act," were adopted. That the constitutional provision in question was designed for the suppression of a part of the evils mentioned, is apparent from the frame of the sentence in which it is expressed. The revival or amendment of a law by reference to its title—which is interdicted—and the insertion at length of the act to be revised or of the section or sections proposed to be amended—which. is required—are, by the use of the disjunctive, set in direct opposition—the one is forbidden and the other enjoined.

The constitution of Michigan contains a provision very like that under consideration. It provides that " no law shall be revised, altered or amended by reference to its title only, but the act revised or section or sections of the act altered or amended shall be re-enacted and published at length." Under this constitutional provision, the Supreme Court of Michigan held that an act establishing a police government for an incorporated city, which did not assume in terms to revise, alter or amend any section of the city charter, was valid, although by the transfer of duties from one officer to another, it had an amendatory effect, by implication, on sections of the city charter which were not re-enacted and republished. In the opinion of the court, Cooley, J., uses this language: " We are unable to see how this act conflicts with the provision [of the constitution] referred to. If whenever a new statute is

passed it is necessary that all prior statutes modified by it by implication should be re-enacted and published at length as modified, then a large portion of the whole code of laws of the state would require to be republished at every session, and parts of it several times over, until, from mere immensity of material, it would be impossible to tell what the law was. * * * The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect; and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. An amendatory act which purported only to insert certain words, or to substitute one phrase for another in an act or section which was only referred to, but not republished, was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the constitution wisely prohibited such legislation. But an act complete in itself is not within the mischief designed to be remedied by this provision, and cannot be held to be prohibited by it without violating its plain intent. *People* v. *Mahaney*, 13 *Mich.* 482, 496.

This construction of the Michigan constitutional provision was re-affirmed in *People* v. *Wands*, 23 *Mich.* 385, and in *Swartwout* v. *Mich. Cent. R. R. Co.*, 24 *Id.* 389. In the last case it was decided that a statute which purports to add a new section to a prior statute, and by implication amends other sections, without re-enacting and republishing the latter, was not unconstitutional. The same rule of construction was adopted and applied by the courts of Alabama, Indiana and Ohio to like constitutional provisions. *Pollard* v. *Moody*, 39 *Ala.* 77; *Tuscaloosa Bridge Co.* v. *Olmsted*, 41 *Id.* 9; *Branham* v. *Lange*, 16 *Ind.* 497; *Lehman* v. *McBride*, 15 *Ohio* (*N. S.*) 573; *Cooley Const. Law* 152. We think it is founded on correct principles, and that it should be applied to the constitutional provision now under consideration.

The act of 1882 is complete in itself. It does not purport to amend any prior statute. With the act before him, no member of the legislature could be misled or be in doubt as to the nature and extent of the law to which he was about to give his support, and no difficulty can arise in the public mind as to the meaning it was designed to have. It refers to a certain described class of judgments, and declares that parties aggrieved thereby shall have remedy by appeal to the District Court only. It is a supplement to a statute described by its title, and thereby became part of the legislation embraced in the original act and its other supplements, and was amendatory of them only in the fact that its provisions operated to amend other parts of the same system of legislation by repealing them *pro tanto* by implication. The act in question is neither within the letter nor within the spirit of the constitutional prohibition.

The plaintiff in *certiorari* asks that, in case this court thinks his appeal was not properly taken, the case be sent back for a retrial before the justice, pursuant to section 104 of the Justices' Court act. *Rev.*, *p.* 357, § 103. He has a strong claim to any relief in the power of the court. The act taking away the right of appeal to the Pleas was approved March 17th, 1882. It was made to go into effect immediately. The case was tried April 21st, 1882, and the appeal to the Pleas was taken April 28th. The act of 1882 requires that the appeal to the District Court shall be taken within ten days after judgment rendered. Neither the plaintiff in *certiorari* nor his counsel knew of the passage of the act until the time for appeal had expired. The wrong suffered by the plaintiff in *certiorari* should admonish the legislature of the injustice of making acts taking away remedies go into effect immediately. But we cannot aid the plaintiff in *certiorari* on this writ. His writ removed only the proceedings in the Pleas, dismissing the appeal for want of jurisdiction. It did not bring before us the judgment of the justice, or any judgment on the merits, for review. Being of opinion that the decision of the Pleas was right, we can only affirm it, and without looking

into the alleged errors of the justice. We have no power even to relieve the plaintiff in *certiorari* from costs. *Rev., p.* 556, § 98.

Judgment affirmed.