[No. 5070.   Decided February 20, 1905.]

THE STATE OF WASHINGTON, *on the Relation of B. F. Heuston, Plaintiff,* v. S. A. CALLVERT, *as Commissioner of Public Lands, Defendant.*[1]

PUBLIC LANDS—SALES—TIMBER ON STATE LAND—SOLD SEPARATE-LY—STATUTES—CONSTRUCTION. Laws 1897, pp. 235, 236, §§ 11 and 12, as amended by Laws 1903, p. 103 and Laws 1901, p. 308, requires that the timber on state land shall be sold separately from the land, and that the land shall not be sold, where the timber thereon exceeds one million feet to the quarter section, although that provision of the law is added as an amendment to §12 which relates solely to applications for the sale of timber and other products exclusive of the land, and the sale was applied for under §11, relating to applications for the sale of land without any reference to the timber thereon; since §11 is not an independent act, and must be construed with reference to other parts of the act as now amended, and was impliedly modified by the amendment to section 12.

Application filed in the supreme court February 29, 1904, for a writ of mandamus to compel the commissioner of public lands to sell certain state timber lands to the relator.    Writ denied.

*B. F. Heuston (H. S. Griggs,* of counsel), *pro se.*

Reported in 79 Pac. 791.

*W. B. Stratton, Attorney General (C. H. Forney, George Dysart* and *James M. Ashton,* of counsel), for defendant.

MOUNT, C. J.—Petition for writ of mandate. Petitioner presented to the commissioner of public lands his application to purchase the northwest quarter of section 16, township 21 north, range 1 east, W. M. The application shows that this land contains 1,200,000 feet of merchantable timber, worth $1 per 1,000 feet, and that the applicant desires to purchase the land with the timber, and not the timber without the land. When the application to purchase was presented to the commissioner of public lands, he refused to consider it, upon the ground that he was not authorized to sell land and timber when there was more than 1,000,000 feet of timber on a quarter section of land. This writ is sued out to compel the commissioner to sell the land with the timber.

The petitioner contends that the commissioner may sell the land notwithstanding the amount of timber there may be thereon. This raises the only question in the case, and depends upon the construction of sections 11, 12, of the act of 1897, pp. 235, 236, with their subsequent amendments. These sections, as they now stand, are as follows:

"§ 11. That any person or company may make written application to the board of appraisers for the appraisement and sale of any lands belonging to the state, and said board shall cause to be prepared blank applications containing such instructions as will inform and aid intending purchasers in making application for the appraisement and sale of any lands. Each application must be accompanied with certificate of deposit or certified check upon any bank of this state, made payable to the state treasurer and equal in amount to ten cents per acre for the land described in such application: *Provided,* That such deposit may be made in cash or by postoffice money order, but in no case shall such deposit be less than ten dollars. In case the

lands described in such application are sold at the time they are offered for sale, in accordance with such application, the amount of such deposit shall be returned to such applicant. If such lands be not sold, through fault of said applicant at such sale, such deposit shall be forfeited to the state, and shall be so declared by the said board, and the state treasurer shall thereupon place said forfeited money to the credit of the general fund of the state. That when, in the judgment of the board of appraisers or the commissioner of public lands, a sufficient number of applications have been received for the appraisement and sale of any lands belonging to the state, said commissioner of public lands shall cause any of such lands so applied for to be personally inspected and appraised as to its character, topography, agriculture, timber, coal, mineral, stone or rock quarries, or grazing, its distance from any city, town, railroad, river, irrigation ditch or other waterways, when irrigation is required, and fully report the same to said board or commissioner of public lands, together with the commissioner's or appraiser's judgment as to its present and prospective value, which said report shall be considered and thereupon a price per acre fixed for each quarter section and subdivision thereof, or lot or block, which shall not be less than ten dollars per acre for lands granted for educational purposes: *Provided,* That no more than one hundred and sixty acres (160) of any school or granted lands of the state shall be offered for sale in one parcel, and all lands within the limits of any incorporated city or town or within two miles of the boundary of such incorporated city or town, where the valuation of such lands shall be found by appraisement to exceed one hundred dollars per acre, shall, before the same be sold, be platted into lots and blocks of not more than five acres in a block and not more than one block shall be offered for sale in one parcel, and said board is hereby authorized to plat such lands into lots and blocks, and all plats shall be filed in the office of the commissioner of public lands: *Provided further,* That whenever application is made to purchase less than a section, the said commissioner of public lands may order the inspection of an entire section or sections: *Provided*

*further,* That all school and granted lands for educational
purposes may thereafter be sold at not less than the ap-
praised value, when the purchase price realized for the tim-
ber thereon added to the appraised value of the land is ten
dollars per acre or in excess thereof." Laws 1903, p. 103.

"§ 12. That when applications are made for the pur-
chase of timber, stone, fallen timber, hay, or gravel, or
other valuable materials situated upon public lands of the
state, the same inspection shall be had as for applications
to purchase lands: *Provided,* That no standing timber or
stone shall be sold for less than the appraised value thereof,
and such timber, stone, hay and gravel may be sold sepa-
rate from the land, when, in the judgment of the board,
it is for the best interest of the state to sell same, except
when the estimated amount of timber shall exceed one mil-
lion feet to the quarter section, in which case the timber
shall be sold separate from the land: *And provided further,*
That the full purchase price of such valuable materials
shall be paid in cash when sold separate from the lands:
*Provided.* That in all cases when the timber is sold sepa-
rate from the land, said timber shall revert to
the state if it has not been removed from the
land within three years from the date of purchase
thereof, except that in all cases when the purchasers are
acting in good faith and removing the said timber, the
land commissioner may extend the time of removal for a
period not to exceed two years. That in every appraise-
ment of land granted to this state the board of appraisers
shall be and serve as the board of appraisers mentioned in
section 2 of article 16 of the state constitution. And in
every appraisement under this chapter the said board shall
separately appraise all improvements placed upon any land
of the state and found on such land at the time of the ap-
praisement; and shall also appraise all damages and waste
done to said land by the cutting and removal of timber or
the removal of stone or other materials by the person or
persons claiming such improvements, or by his consent,
and the damage to the land or materials thereon by reason
of the use and occupancy of said land shall be considered in
the appraisement, and the balance, after deducting such

damages and waste appraised as aforesaid, shall be determined as the value of the improvements upon the land so appraised and every such appraisement shall be recorded in the proceedings of the board of appraisers: *Provided,* That this section shall not be considered to affect the right of the state to the value of such land: *Provided further,* That if the purchaser of such land from the state be not the owner of the improvements he shall deposit with the state treasurer, through the board of appraisers, within thirty days after the sale, the appraised value of such improvements; and if it be found by the said board that the owner of said improvements was not holding adversely to the state or improving said land, or that said improvements were placed on said land in good faith by a lessee from the state or territory, or that said lessee had in all respects complied with the terms of his lease and his leasehold interest, not forfeit or subject to a forfeiture, then the board of appraisers shall direct the state treasurer to pay, and he shall pay to the owner of said improvements such sum so deposited; but if it be found by the said board of appraisers that the said improvements owned or made on said land by parties holding or claiming the land, adversely to the state, or by persons without license or lease from the state, or by a lessee who had not complied with the terms of his lease, then said board shall direct the state treasurer to pay over such sum so deposited into the permanent school fund.   In case the purchaser shall not deposit the appraised value of the improvements in the manner described above, the sale may be disapproved by the board of appraisers: *Provided further,* That if the said improvements were made by a lessee or other person with intent to defraud the state or the intending purchaser the sum so deposited shall be returned in the manner described above, to the state: *Provided further,* That in determining the value and nature of such improvements the board is hereby authorized to compel by subpoena the attendance, swear and examine witnesses as to the cost and value of such improvements and the damage and waste as well." Laws 1901, p. 308.

It will be seen that section 12 provides that "timber

. . . may be sold separate from the land, when, in the judgment of the board, it is for the best interest of the state to sell same, *except when the estimated amount of timber shall exceed one million feet to the quarter section, in which case the timber shall be sold separate from the land.*" This language clearly means that the timber and land cannot be sold when the amount of timber shall exceed 1,000,-000 feet to the quarter section. Counsel for petitioner argues that section 11 relates solely to the sale of land, with everything contained therein, while section 12 relates to the sale of timber and other land products, exclusive of the land, and that the application in this case to purchase the land was made under section 11, and must be governed by that section alone. Conceding that section 11 relates solely to the sale of the land, in our opinion it does not have the effect of an independent act, but must be construed with reference to other sections of the same act. When the two sections, 11 and 12, are read together, it is apparent that the legislature intended that, when the amount of timber on a quarter section of land exceeds 1,000,000 feet, the land and timber should not be sold together, but the timber alone should be sold. It is true that section 12 of the act of 1897 did not contain the clause "except when the estimated amount of timber shall exceed one million feet to the quarter section, in which case the timber shall be sold separate from the land." This clause was inserted by amendment in 1901. Laws 1901, p. 308. But this amendment necessarily had the effect impliedly to modify section 11, so that lands containing more than 1,000,000 feet of timber could not be sold with the timber thereon. Sutherland, Stat. Constr., § 135; *Swartwout v. Michigan etc. R. Co.,* 24 Mich. 389; *Lawrence v. Grambling,* 13 S. C. 120. Section 11 was subsequently amended in 1903. Laws 1903, p. 103. But the amendments then

made do not, in our opinion, affect the provisions of section 12, above discussed.   The two sections, as now amended, must stand together as parts of the same act, and be construed as if originally enacted, and according to the intent of the legislature as manifested by the language used. When so construed, we think it is clear that the commissioner of public lands has no authority to sell the quarter section of land in question, because it contains more than 1,000,000 feet of timber.

The writ prayed for is therefore denied.

FULLERTON, HADLEY, and DUNBAR, JJ., concur.

RUDKIN, ROOT, and CROW, JJ., took no part.