## EWING v. ROBESON, and Another.

The *Laurel Bank* was organized under the general banking-law of *May* 20, 1852, and located at *Laurel*, in *Franklin* County. The taxes assessed against the bank for the year 1855, remaining unpaid, the treasurer of the county

seized certain personal property, owned by the bank, at the time of the assessment and levy of the taxes, to satisfy the same. Suit by *E.*, who claimed the property by purchase from the bank, to recover the same from the treasurer.

*Held*, that it was sufficient for the treasurer to show, that the bank had assumed to organize under the general banking-law, and was acting under such organization, and that the bank would be estopped to deny the regularity of its organization.

*Held*, also, that the duplicate, being legal on its face, justified the treasurer in holding property seized in the legal collection of taxes; and it was not necessary for him to show a legal assessment of the taxes.

*Held*, also, that the tax duplicate is not a written instrument, within the meaning of § 78 of the code; and a copy of it need not be filed with a pleading based upon, or referring to it.

*Held*, also, that § 9, of the general banking-law of 1852, and § 10, of the amended law of 1855, which provide, in certain contingencies, for the application of interest accruing on bonds of the bank, deposited with the Auditor of State, to the redemption of the notes of the bank, construed in connection with the law of *January* 26, 1855; (Acts 1855, p. 17,) authorizing the Auditor, in certain cases, to retain the interest accruing on the bonds for the payment of taxes due from the bank; require, that the interest, if needed, should first go to the redemption of the notes of the bank; and, if not so needed, it may then be retained by the auditor for the payment of taxes.

*Held*, also, that the law authorizing the Auditor of State to retain the interest accruing upon bonds for the payment of taxes, did not repeal the general revenue law, requiring the County Treasurer to collect the taxes of the bank; nor does it absolutely appropriate the interest, at once, to the payment of the taxes; but only provides a cumulative remedy and security, for the collection of the taxes.

*Held*, also, the president of the bank being assessed for the property in controversy, and not having sold it until after the lien for the taxes had attached, that it was liable to be seized for the taxes.

APPEAL from the *Franklin* Circuit Court.

PERKINS, J.—*Ewing* sues *Manley* and *Robeson* to recover possession of certain articles of personal property of which he claims to be the owner through purchase from the president of the *Laurel Bank*.

The defendants answer: 1. General denial. 2. "That the *Laurel Bank* was organized under 'an act to authorize and regulate the business of general banking,' approved *May* 20, 1852; was located and doing business at *Laurel*, in *Franklin* County; that after its organization and location,

Nov. Term,
1860.

EWING.
v.
ROBESON.

the bank was legally assessed and taxed on the duplicate for the year 1855, in said county, for the amount of $557.20 for State and other taxes legally due for that year, and marked as No. 546 in *Laurel* township, in said county; that *William N. Doughty*, or the *Laurel Bank*, was also regularly and legally assessed and taxed on said duplicate for 1855, in the sum of $2.49, numbered 120 in said township; that these taxes are unpaid, and penalties of $55.73 against the bank, and of 25 cents against *Doughty*, have accrued, with interest from *March* 16, 1856; that at the time of the assessment and levy of said tax, the bank was the owner of the property named in the complaint, and that the plaintiff and *Doughty* were the stockholders of said bank, and the officers thereof, *Doughty* being president and *Ewing* cashier; that defendant, *Robeson*, throughout the year 1855 was, and still is, the treasurer of said county; that said duplicate, containing the said assessments, was delivered to him in due form of law, and that the property sued for was seized for said taxes by *Robeson* as such treasurer, and by *Manley*, as his deputy, and taken into their possession to pay said taxes." 3d paragraph: containing substantially the same averments as the second, with these additional: that the bank had failed to redeem its circulation, had no means or securities of any kind for that purpose, and was wholly insolvent; that the two safes sued for were in the possession of the bank, and taxed to it, and not to any other person. Demurrers were put in to the second and third paragraphs, and were overruled. Replies: 1. Denying generally the allegations contained in the second and third paragraphs of the answer. 2. That when said tax was levied, and ever since, there has been and still is a large amount of interest due and unpaid upon the bonds of said bank, in the hands of the Auditor of State, retained by him pursuant to the statute; and that the amount is sufficient to pay said taxes, if any are due. To this second paragraph of the reply there was a demurrer put in and sustained. Trial by jury; verdict for the plaintiff as to all the property except a certain new safe, valued at $200, as to which, verdict, that it was the property of the bank, and

subject to seizure for said tax. Motion for new trial denied, and judgment upon the verdict.

Nov. Term,
1860.

EWING
v.
ROBESON.

The first two grounds relied upon for the reversal of the judgment are defects in pleading.

It is claimed that the answer, in setting up the tax upon the bank, should have set out the steps taken in its organization, that it might appear whether it was a legal corporation.

In this we do not concur. On the trial, it would not be necessary that proof of these steps should be made to establish the liability of the bank. It would only be necessary to show that the bank had assumed to organize under the general banking-law, which the court judicially knows to exist, and was acting under such organization. The bank would be estopped to deny the regularity of its organization.

In such a case as this it is not necessary to allege more than it is necessary to prove. See *Shoppal* v. *Hubbard*, 14 Ind., and cases cited. The case at bar is entirely different from *Brown* v. *Killian*, 11 Ind. 449.

Again: it is claimed that a legal assessment of the tax should be shown.

This we think a mistake.

A constable or sheriff is not bound, as a general proposition, to look beyond the face of the writ delivered to him to execute. If it is legal, on its face, he is bound to execute it; and he can plead it as a justification, though the proceedings before the magistrate, which led to the issue of the writ, were illegal. It is different where the suit is against the plaintiff who procures, or the justice who issues the writ. Stephens on Pl., 329. *Patterson* v. *Kise*, 2 Blackf. 127, as modified by *Davis* v. *Bush*, 4 *Id.* 330; see, also, *Stewart* v. *The State*, 4 *Id.* 171. We think the same rule applies to a tax-collector. The law requires the duplicate to be delivered to him, and requires him to collect the tax. The duplicate is his authority; and, if legal, on its face, must be his justification, and sufficient authority to enable him to hold property seized in the legal collection of taxes upon it. Whether the purchaser of the property would acquire a title at a legal sale upon an illegal tax, is another question. So, whether a

Nov. Term,
1860.

Ewing
v.
Robeson.

sale might not be enjoined, upon the bank showing that the tax was illegal. See 2 R. S. p. 45, §§ 83, 89, 90. So, whether a reply in this case might have set up illegality in the tax.

Further: it is claimed that the tax-duplicate is a written instrument, a copy of which should have been filed with the answer. It will be observed that our statute (1 R. S. p. 129) does not require any precept to be delivered with the duplicate—simply the duplicate, which is, itself, but little more than a copy of the assessment.

There is some difficulty in determining what is a written instrument, within the meaning of the statute. An account, though in writing, has not been considered such by this Court, though a written assignment thereof has been. 12 Ind. 241. So of a record of a suit or judgment. 14 Ind. 222. While, in the Superior Court of *Cincinnati, Ohio,* a learned and able tribunal, such record is held not to be a written instrument within the intention of the statute. They say it embraces only instruments "executed by, or between, parties." Western Law Monthly, vol. 2, 315. See Worcester's Dictionary, "Instrument." We think the tax-duplicate more nearly resembles a book-account, and should not be regarded as within the statutory meaning of written instrument.

Another position taken is, that taxes upon free banks are only to be collected by the State auditor out of interest accruing upon deposited bonds. By the general banking-law of 1852, the principal, of the bonds deposited with the auditor, was a security for the redemption of the notes of the bank, and, perhaps, the payment of deposits. *The State* v. *Dunn,* 10 Ind. 269. The interest accruing on the bonds might also be thus applied in certain contingencies; but, till the happening of some one of these contingencies, the interest might be paid over to the banks. 1 R. S. p. 154, § 9. The same provisions are re-enacted in the Act of 1855, which became a law in *March* of that year. Acts of 1855, p. 35, § 10. On *January* 26, 1855, an act entitled "An act to authorize the auditor or other officer of State to retain so much of the interest on the stocks of any bank as may be sufficient to pay its taxes, and to indemnify the State against loss of any sum due, by any bank, to the State," became a law. Acts of

1855, p. 17. And, the first question is: How are these acts to be construed? Are they all in force? They are all, to a considerable extent, upon the same subject-matter, and they may all be harmonized. They authorize the auditor of State to appropriate the interest accruing upon bank bonds to two purposes, viz: redemption of notes, and payment of dues to the State; but how; when: simultaneously or in succession; *pro rata* or exclusively? We think exclusively and in succession. We think they are first to go, if needed at the time, to the purpose to which they were first, by law, devoted, viz: the redemption of the bills in the hands of the people. This, good faith requires; and we will not hold, by construction, that the State intended to violate good faith. If' not, at the time, needed for the redemption of circulation, then, instead of being paid over to the bank, they may be held for the payment of taxes and specified dues to the State.

This view is strengthened by the emergency-clause of the act. It recites that taxes against the banks remain unpaid; but proceeds upon the assumption that the circulation is being otherwise redeemed, or may have been entirely redeemed; so that the interest, not being required for that purpose, might, under the existing law, "be at once withdrawn;" and, where the bank had wound up, or had disposed of all its property, the State and counties be left without remedy: so that it became proper to secure such interest as was not required for the redemption of circulation, for an indemnity against other indebtedness.

The next question is: Was this act, conferring upon the State auditor the right, in certain contingencies, to hold the interest on bank bonds, (provided any interest had been paid in on the bonds,) a repeal of the general revenue law, so far as it authorizes and requires the county treasurer to collect the tax from the bank, or its property, in the usual mode? See *Cones* v. *Wilson*, 14 Ind. We think not. We think it was only a cumulative remedy—an additional security. This is manifest from the second section of the act, which requires each county auditor to certify to the State auditor the amount of taxes "due by any bank or banks organized" in his county. It does not assume to interfere with the

Nov. Term,
1860.

Ewing
v.
Robeson.

county treasurer; it requires nothing of him; it does not even require the State auditor to certify to him whether there may be any interest in his hands or not. The act does not appropriate the interest absolutely to the payment, at once, of the tax. It authorizes it to be withheld, provided there is any to withhold, from the bank, when it may call for it, till it satisfies the auditor that any taxes, certified to him as due, have been paid. This is the legal effect of the act.

If the bank had had interest in the hands of the auditor of State, and had agreed with him that an amount, equal to the taxes due, should be actually appropriated to their payment; and had taken the auditor's receipt therefor; perhaps the county treasurer would have been authorized to accept such receipt as cash, and could have used it in his settlement with the State treasurer.

Instructions of the Court are objected to; but as we think the verdict is clearly right on the evidence, we shall not examine them. 1 Ind. 405.

It appears that *William N. Doughty*, president of the bank, was assessed for the safe mentioned in the verdict; that it was not sold, by him, till after the lien of the tax had attached; and that it was still in the county when seized. See the case of *Cones* v. *Wilson*, 14 Ind. The collector was, therefore, authorized to seize it for the tax.

In this case, as we have seen, both parties recovered; each a portion of the property; and, in such cases, the rule seems to be that, each party recovers his costs of the other: but no question, as to costs, appears to have been raised.

*Per Curiam.*—The judgment is affirmed, with costs.

*Wilson Morrow, L. Barbour*, and *J. D. Howland*, for appellants.

*Geo. Holland, C. C. Binkley, D. D. Jones*, and *Henry Berry, Jr.*, for appellees.