Adams v. Davis.

No. 12,660.

ADAMS v. DAVIS.

TAXES.—*Repeal of Law.*—*Collection of Prior Taxes.*—*Act of 1872.*—The collection of taxes assessed under the law in force prior to 1872 was not affected by the repeal of that law by the act of 1872.

SAME.—*Act of 1881.*—All taxes existing at the time the act of 1881 was passed were expressly preserved by that act, and were not affected by the repeal of prior laws.

SAME.—*Presumption of Legality.*—It will be presumed, as provided by statute, that all taxes assessed upon property in this State were legally assessed, until the contrary is affirmatively shown. Section 6498, R. S. 1881.

SAME.—*Lien Perpetual.*—*Dropping from Duplicate.*—*Reinstatement.*—The lien for taxes is perpetual until payment, and is not destroyed by the taxes being dropped from the duplicates for some intervening years and placed for those years upon a "register of doubtful taxes."

SAME.—*Presumption that Taxes were Placed on Duplicate by Proper Officer.*—It will be presumed, in the absence of any showing to the contrary, that specified taxes were placed upon the duplicate in the treasurer's hands by the county auditor, whose duty it is to do so.

SAME.—*Delinquent.*—*Distress and Sale.*—*Replevin.*—*Legality of Assessment.*—*County Treasurer.*—In an action against a county treasurer to replevin property distrained by him for delinquent taxes, if the duplicate in his hands is legal on its face, it is not necessary for him to show a legal assessment of the taxes.

SAME.—*Authority of Treasurer to Collect.*—Under the act of 1881, the county treasurer, by virtue of the duplicates placed in his hands by the county auditor, has authority to collect delinquent taxes by distress and sale of personal property, at any time, whether before or after the April settlement, whether the list provided for by section 6427 has been made or not, and whether the delinquent taxes are charged upon the current duplicate or not.

SAME.— *When Replevin will not Lie.*—Replevin will not lie to recover possession of property taken for a tax assessment.

EVIDENCE.—*Receipt.*—*Contradiction by Parol.*—A receipt may be explained or contradicted by parol.

SUPREME COURT.—*Agreement.*— *Interpretation by Parties in Trial Court.*—*Theory of Case.*—Upon an appeal to the Supreme Court, the parties to an action will be held to the interpretation which they have placed upon an agreement in the trial court, and to the theory upon which the case was tried.

From the Sullivan Circuit Court.

*C. E. Barrett* and *W. E. Barrett,* for appellant.

*J. C. Briggs, J. T. Hays, W. C. Hultz* and *H. J. Hays,* for appellee.

ZOLLARS, J.—This is an action of replevin, instituted by appellant, to recover the possession of a horse held by appellee as treasurer of Sullivan county. The treasurer claims the right to hold the possession of, and to sell the horse, under a levy made by him, to make the amount of a tax assessed against appellant in 1866, and which, by reason of non-payment, has become delinquent.

At the request of the parties, the trial court made a special finding of facts. To the conclusion of law upon those facts, appellant excepted, and also filed a motion for a new trial.

We are met at the threshold with appellant's contention that the tax laws of 1872 and 1881, respectively, repealed all former tax laws, and that, hence, the taxes in question, for the satisfaction of which the horse was taken, having been assessed prior to 1872, had, and have, no legal existence.

In the case of *Gorley* v. *Sewell,* 77 Ind. 316, it was held, that taxes assessed under laws prior to the act of 1872, were preserved by, and might be collected under, the provisions of that act. That case has been since cited and approved. *McWhinney* v. *City of Indianapolis,* 101 Ind. 150. Following those cases, which we regard as having been correctly decided, it must be held, that if the taxes in question were properly assessed against appellant under the laws then in force, they were not swept away, but left, and kept intact by the tax law of 1872, and could have been collected under the provisions of that law, unless there was some obstacle in the way, other than the repeal of former laws by that act.

All taxes existing at the time the act of 1881 was passed, were expressly preserved by that act. R. S. 1881, section 6521. And, according to the above cases, such taxes are to be collected in the manner by that act provided.

Counsel have discussed a multiplicity of questions involving a proper construction of our complicated revenue laws, the two most important of which, as affecting this case, are :

*First.* Was there a legal tax assessed against appellant? and, *Second.* Did the treasurer levy upon the horse by virtue of legal authority? These in their order.

Upon the question of the delinquent taxes charged against appellant, the special finding of facts is as follows :

"*Second.* In 1868 there were, upon the tax duplicate of Sullivan county, delinquent taxes against appellant in the sum of $37.15.

"*Third.* In February, 1866, appellant moved from this State to the State of Illinois.

"*Fourth.* The delinquent taxes, so upon the duplicate of 1868, were dropped from the current duplicate for succeeding years, and were placed upon a book which the county treasurer called 'Insolvent Record,' and so remained until 1884, when they were placed upon the current duplicate for that year.   *   *   *

"*Seventh.* In 1872 appellant again became, and has since been, a resident of Sullivan county, and his name has been upon the duplicate as a taxpayer."

The evidence shows that the proper assessor assessed appellant's personal property for the year 1866; that upon the duplicate of 1867, the taxes appeared as delinquent; that that delinquency was carried to, and placed upon, the delinquent list of Sullivan county for the year 1869, returned by the county treasurer after the third Monday of April, 1870; that the delinquency was also placed upon "a register of insolvent and doubtful taxes, discontinued on duplicate Turman township, Sullivan county, for the year 1869;" and that the said taxes were placed upon the tax duplicate for the year 1884 as delinquent.

As found by the court, appellant left the State in February, 1866, but that did not affect the assessment of his property for that year. As the law then was, it required each person

to be listed for all the personal estate owned by him on the 1st day of January of the year in which the enlistment was made. 1 G. & H., p. 71, section 13.

It was further provided, that the lien for taxes should attach on the 1st day of January, and be perpetual until payment. 1 G. & H., p. 99, section 112.

Thus it will be seen, that the taxes in question, upon the assessment properly made, appeared upon the several duplicates named, including that of 1884.

It does not appear who placed the taxes upon the duplicate of 1884. As the county auditor had authority to do so (R. S. 1881, section 6421), it should be presumed that it was done by him. *Hazzard* v. *Heacock*, 39 Ind. 172; *State* v. *Wenzel*, 77 Ind. 428.

That the taxes were dropped from the current duplicates for some years, and placed upon "a register of doubtful taxes," can make no difference. By all of the tax laws in force at the time the taxes were assessed, and since, taxes ceased to be a lien only with payment. Some of the laws expressly provided that when there was no probability of collection, they might be dropped from the current duplicates. So, dropping them from such duplicates did not destroy them.

The taxes were found upon the duplicates named, including the duplicate of 1884, and the statute provides, that all taxes assessed upon any property in this State, shall be presumed to be legally assessed, until the contrary is affirmatively shown. R. S. 1881, section 6498.

It is contended by appellant, that the taxes appearing upon the duplicate of 1884, were assessed by the county treasurer, and that he had no authority to make such an assessment. Without stopping to inquire as to the authority of the county treasurer in that regard, it is sufficient to say that the record as a whole, aided by the presumptions above stated, makes it very clear, that appellant's contention has no substantial

ground upon which to rest, and that the taxes were assessed and placed upon the duplicates by proper authority.

Our conclusion is, that the record sufficiently shows that the taxes were legally assessed, and that they still exist as a legal and enforceable charge upon appellant's property.

In a case like this, where the duplicate in the hands of the treasurer is legal on its face, as here, it is not necessary for him to show a legal assessment of the taxes. *Ewing* v. *Robeson*, 15 Ind. 26; *Noland* v. *Busby*, 28 Ind. 154; *Hazzard* v. *Heacock, supra.*

As we shall see hereafter, some of the cases hold, that it can not be shown by the plaintiff, in an action of replevin like this, that the taxes were not legally assessed, and do not constitute an enforceable charge.

The second inquiry is, did the treasurer levy upon the horse by virtue of legal authority?

Upon that question the finding of facts is as follows:

"*Fifth.* At the end of the duplicate of 1868, the county auditor attached his certificate, under his hand and seal, as to the correctness of the duplicate, and commanding the treasurer to collect the same.

"*Sixth.* Attached to the duplicate of 1884, there was a like certificate, and both duplicates were delivered to the treasurer at the proper time.   *   *   *

"*Ninth.* On the 19th day of February, 1885, appellee, as county treasurer, issued a receipt in due form, for the above mentioned delinquent taxes of 1866, against appellant, and, without signing his name thereto, gave it to a duly appointed deputy, with instructions to collect said taxes. Appellant having refused to pay, the deputy levied upon the horse, and made the following return upon the receipt: 'By virtue of this receipt, I this day levied on one dark gray horse, taken as the property of Wm. Adams, to satisfy this receipt. C. L. Davis, Treas., by Reed, dept.'"

So far as applicable here, the statutes have all the time required the county auditor, in making the tax duplicates, to

set down in separate columns the different taxes, and, also,, the delinquent taxes for preceding years. 1 G. & H., p. 94, section 78; 1 R. S. 1876, p. 108, section 138; R. S. 1881, section 6418.

The statutes, prior to the act of 1881, very explicitly required the county treasurer to receive from the auditor the duplicates thus made, and to proceed at once to collect the same. Following these requirements, was the following section in the act of 1872, which was similar to the previous act, viz.: " In case any person shall refuse or neglect to pay the tax imposed on him, the county treasurer shall, after the third Monday of April, levy the same, * * * by distress and sale of the goods and chattels of such person," etc. 1 R. S. 1876, p. 111, sections 152, 155. See, also, 1 G. & H., p. 97, sections 93, 96.

Both statutes gave the treasurer authority to collect delinquent taxes by distress and sale of personal property, at any time, whether they were charged upon the current duplicate or not, and as well before as after his settlement for the current year's taxes. 1 R. S. 1876, pp. 111, 112, sections 155,. 156; 1 G. & H., p. 98, sections 100, 101.

It has been held, that under those statutes, the tax duplicate in the hands of the treasurer, if legal on its face, was sufficient authority to enable him to seize, hold, and sell personal property in satisfaction of delinquent taxes. *Ewing* v. *Robeson, supra; Noland* v. *Busby, supra; Hazzard* v. *Heacock, supra.*

The act of 1881 contains no section in the language of the section of the act of 1872 above set out. Occupying a position in the act of 1881, corresponding to that of the section above set out, as to the other sections defining the duties and powers of the county treasurer in the collection of taxes, is. the following: "After the third Monday of April, the treasurer shall cause a list to be made of the delinquents, with the amount due from each, and with a separate column headed ' return,' which list shall be certified to be correct by the

county auditor. He shall then proceed with such list, which, when so certified, shall be a sufficient authority, and have the same force and effect as an execution, and call either in person or by deputy, upon every person named in the duplicate who is delinquent, * * * and he shall make a demand, * * and if the taxes and penalty are not paid on such demand, he shall proceed immediately to levy upon sufficient personal property of such delinquent to pay such taxes, * * * and to sell the same. * * * When he can find no personal property of such delinquent * * * upon which to levy, after diligent search therefor, he shall make, opposite the name of said person on said list in the column marked ' return,' a special return, setting forth the fact that he had made diligent search in the county for personal property of such delinquent, and was unable to find any upon which to levy for the payment of the taxes due thereon; which return shall be *prima facie* evidence of the facts therein recited." R. S. 1881, section 6427.

It is contended by appellant, as we understand the argument of his counsel, that the list provided for by the above section, confers upon the treasurer all the authority he has under the act of 1881, to distrain and sell personal property; that he must have the list with him when he levies upon such property; that he must make a return upon such list; that in this case the treasurer had no such list, and that, therefore, his levy upon, and retention of the horse, were without authority, and illegal, and that such want of authority may be taken advantage of in a case of this character.

In our judgment, a proper construction of the act of 1881 leads to the conclusion, that the treasurer has authority to collect delinquent taxes by seizure and sale of personal property, aside from section 6427, *supra.* In other words, that he has such authority by virtue of the duplicates placed in his hands by the county auditor.

Section 6500 provides, that the county auditor and treasurer shall attend at the office of the auditor, on the third Mon-

day of April annually ; that the treasurer shall then and there make a settlement with the auditor for the amount of taxes for which the treasurer is to stand charged, as follows : *"First.* The auditor shall, in a column or columns for the purpose, opposite the name and description, on the right hand of the duplicate in the hands of the auditor and treasurer, extend a list of all such taxes as the treasurer shall have been unable to collect. *Second.* The treasurer, under oath, to be administered by the auditor, shall certify in such duplicate to the correctness of such list, setting out in words and in figures the amount thereof. *Third.* The treasurer shall immediately proceed to collect the same in the manner provided by law."

This section, in connection with section 6427, *supra,* which provides for the making of a list by the treasurer, subsequent to such settlement, without reference to other sections of the statute, leads to an inference that a collection by sale of personal property can be made by virtue of that list alone.

Section 6433 is as follows : " Nothing contained in the preceding section shall prevent the treasurer from collecting delinquent taxes at any time by levy and sale of personal property. Whenever he has reason to believe that any person charged with tax is about to remove from the county without payment of his tax, he may, at any time, levy such tax and charges by distraint and sale of personal property. And it is hereby made his duty to levy and collect all delinquent taxes, whether they be charged upon a current year's duplicate or otherwise, as well before as after his return and settlement for a current year's taxes."

" The preceding section," as used in the section above set out, we think, includes section 6427, because that section is upon the same subject. But, however that may be, the section last above set out clearly gives to the treasurer authority to collect delinquent taxes by the sale of personal property at any time, whether before or after the settlement in April, and without reference to it, whether the list provided for in

section 6427 has been made or not, and whether the delinquent taxes are charged upon the current duplicate or not. The column headed "return," which the list is to contain, seems to be designed more particularly for the purpose of making and preserving a record of the fact that the treasurer was unable to find personal property after diligent search.

In that regard, the section was doubtless intended to be an improvement upon section 4 of the act of 1873 as amended in 1875. 1 R. S. 1876, p. 140. See, also, section 6428, R. S. 1881.

It is not shown that the treasurer had in his possession the list provided for by section 6427, *supra*, nor is it shown that he had not. If it were necessary, it perhaps ought to be presumed, in a case of this character, that the officers did their whole duty, and that appellee had such a list in his possession, although the deputy did not have it with him when he levied upon the horse.

When we have determined that there was a valid tax, charged upon the duplicates against appellant, which was delinquent, and that, by virtue of those duplicates, the treasurer had authority to levy upon appellant's personal property, it becomes unnecessary to decide as to whether or not the treasurer's proceeding in making the levy was entirely regular, whether he properly made a return of the levy upon the receipt, or as to whether or not the trial court erred in admitting in evidence the receipt and the return thereon. When it is determined that there was such a tax, that the treasurer had such authority to collect by a levy upon, and the sale of personal property, and made such a levy, and took the property into his possession, the finding and judgment must be against appellant's claim to the immediate possession of the property.

The judgment of the court below being correct, and just what it necessarily had to be, it will not be reversed on account of intervening errors, if there were any.

In this case, appellant accompanied his complaint with an

affidavit, and asked for the immediate possession of the property as against the treasurer. The one and only question was, had appellant the right to such possession?

When the immediate possession of property is sought in an action of replevin, our statute requires that an affidavit shall be made by the plaintiff, or some one in his behalf, showing that the same has not been taken for a tax, assessment, etc. R. S. 1881, section 1267.

When it is shown that it has been taken for a tax, as it is shown here, the plaintiff's case is at an end, and the judgment must be against him. Such is the ruling everywhere.

Citing authorities, Mr. Wells, in his work on Replevin, at section 224, says: "There is a provision common to the laws of all the States, that goods seized on legal process issued for the collection of a tax can not be retaken from the officer by a writ of replevin. * * * The law therefore forbids replevin of goods so seized, and remits the party to his action for trespass or trover, or such other proper action as he may elect."

Justice BREESE, in the case of McClaughry v. Cratzenberg, 39 Ill. 117, 122, said: "Disastrous, indeed, would be the consequences to the public was it allowed to every taxable inhabitant, who may have conceived a notion that a law of general application, imposing taxes, is void, and, therefore, he shall be permitted to arrest its operation, and thus break down the financial system of the State. If one may do it, the whole community may, and ruin and disgrace would inevitably follow the extinction of our State credit thus brought about. The law forbids the consideration of the question of the legality of a tax, assessment or fine, levied under any law standing on the statute book of the State, by means of the action of replevin, and for the reason we have given."

And so, it has been held, that replevin will not lie for property taken by virtue of a warrant for the collection of a tax, even though the warrant may have issued erroneously or irregularly, or contrary to law; that if, on its face, it gives the of-

ficer authority to collect a tax, and to seize property for that purpose, replevin for property so seized can not be sustained. Wells Replevin, section 225; *People* v. *Albany C. P.*, 7 Wend. 485; *Hudler* v. *Golden*, 36 N. Y. 446; *Mount Carbon Coal, etc., Co.* v. *Andrews*, 53 Ill. 177; *Willard* v. *Kimball'* 10 Allen, 211; Morris Replevin, p. 93; *Bringhurst* v. *Pollard*, 6 Ind. 452.

Some of the above cited cases announce a doctrine more radical than we need here declare, or fully endorse. Most of them were based upon statutes, similar to that in force in this State at the time the case of *Bringhurst* v. *Pollard, supra,* was decided, which forbid the issuing of a writ of replevin to recover property taken for a tax. Our statute has been changed, and now an action of replevin may be prosecuted without asking for the immediate possession of the property, and, hence, without filing the bond and affidavit required when such immediate possession is asked. *Catterlin* v. *Mitchell,* 27 Ind. 298; *Hodson* v. *Warner,* 60 Ind. 214.

That change in the statute, however, does not change the rule which controls in the replevying of personal property taken for a tax. Replevin, under our statute, is a possessory action, and the question in such a case is, was the plaintiff entitled to the possession of the property at the time the action was commenced?

In order to get the immediate possession of the property, the plaintiff must file an affidavit showing that it was not taken for a tax. And so, in order to a final recovery, the plaintiff must show that he was entitled to the possession of the property at the time the action was commenced, and to show this, it must be made to appear that it was not taken for a tax. This construction of the statute is fully sustained by the case of *Ewing* v. *Robeson, supra,* and the recent case of *Louisville, etc., R. W. Co.* v. *Payne,* 103 Ind. 183.

The statute under consideration provides, that in order that the plaintiff may have the immediate possession of the property, his affidavit shall also contain a statement that it

has not been seized under an execution or attachment against his property.

In the case last above, which was an action of replevin, it was said : " Under the provisions of our code, the execution defendant can not maintain such an action as this for the recovery of the personal property held under the execution."

Appellant further contends, that it is shown by the proof, that the taxes in question were paid before the levy upon the horse. A receipt was read in evidence which, possibly, is broad enough in its terms to cover those taxes. It is well settled, that a receipt may be explained or contradicted by parol. This was done to the satisfaction of the court below, and the proof is satisfactory here. *Lash* v. *Rendell,* 72 Ind. 475 ; *Hight* v. *Taylor,* 97 Ind. 392 ; *Scott* v. *Scott,* 105 Ind. 584.

During the trial an agreement was made by counsel as to the payment of taxes by appellant, which was intended to serve as evidence in the case. That agreement is broad enough in terms, if literally construed, to cover the taxes here in question ; but it is manifest from the whole record, that counsel and the court gave it a different interpretation, and tried the case from beginning to end upon the theory that the agreement did not, and was not intended to, cover the tax here in question, and for which the levy was made upon the horse.

Upon an appeal, the parties ought to be held to the interpretation which they put upon the agreement below, and to the theory upon which they tried the case. *Reissner* v. *Oxley,* 80 Ind. 580 ; *Graham* v. *Nowlin,* 54 Ind. 389 ; *Carver* v. *Carver,* 97 Ind. 497 (516) ; *Buchanan* v. *State, ex rel.,* 106 Ind. 251.

We do not find it necessary to go into the question as to whether or not, in a case of this character, proof of the payment of the taxes for which the property was taken, is competent. It is sufficient here, that the court below found that they had not been paid, and that there is nothing in the record

that requires, or would justify this court in overthrowing that finding.

Other questions are discussed by counsel, which we do not extend this opinion to decide, as they are not such as could affect the conclusion reached and above stated.

Judgment affirmed, with costs.

Filed Nov. 22, 1886; petition for a rehearing overruled Jan. 5, 1887.