Filed Nov. 9, 1893.

---

No. 17,030.

## FLORER, TREASURER, *v.* McAFFEE ET AL.

TAXES.—*Irregularities in Levy.—Injunction.—Payment or Tender of Part Due.*—Mere irregularities in the levying of taxes or the making of assessments will not avoid their collection; and where any part of a tax or an assessment is due, that part must be paid, or at least offered to be paid, before suit will lie to enjoin the collection of the part alleged to be illegal.

SAME.—*Injunction.—Collection of Assessment for Gravel Road.*—Injunction will not lie on account of the fact that provision was made for collecting a part of the assessment for the construction of a free gravel road before it was actually needed for the payment of bonds or interest to become due.

COUNTY AUDITOR.—*Duties.—Gravel Road Assessment.—Division of.—Tax Duplicate.*—It is the duty of the county auditor to divide the assessment made by the board of commissioners, in such manner as to meet the payment of principal and interest of the bonds issued, in the construction of a free gravel road, as they become due; and to place such part as may be necessary to meet the payment of bonds and interest, upon the special tax duplicate.

From the Tippecanoe Superior Court.

*W. V. Stuart, C. B. Stuart* and *E. P. Hammond,* for appellant.

*A. A. Rice* and *W. S. Potter,* for appellees.

HOWARD, J.—This suit was brought by the appellees, taxpayers assessed for a free gravel road improvement, to enjoin the appellant, county treasurer, from the collection of a part of the assessment for said work, as placed upon a special tax duplicate by the county auditor.

A demurrer to the complaint having been overruled, the appellant answered by setting up, in detail, the proceedings before the county commissioners, and by the county auditor, for the establishment of the gravel road, including the estimate for expenses, the letting of the contract, the issue of bonds, the assessment of benefits, and the placing of a part of the assessment upon the duplicate.

A demurrer to this answer was sustained, and the appellant, refusing to plead further, has appealed to this court.

The proceedings before the board of commissioners were brought under section 5091 and succeeding sections of the Revised Statutes of 1881, and the regularity of these proceedings is not questioned in this appeal.

The estimate of expenses for the work was $10,000, which sum was assessed as benefits to the lands extending along each side and within two miles of the proposed free gravel road. The contract for the work was let for $5,253. Bonds to create a fund to be used in constructing the work, and to reimburse the county for moneys advanced, and for other necessary purposes, were issued in the aggregate amount of $7,000, and were sold for that sum. The bonds were in denominations of $500 each, bore five per cent. interest, and were all dated November 15, 1892. Two of the bonds mature November 15, 1894, and two at the same date each year thereafter, until November 15, 1900.

Section 5096 of the revised statutes already cited, after

providing for the apportionment of the assessments made by the county commissioners, acting upon the report of the committee appointed for that purpose, continues as follows: "The final action of the commissioners shall be entered upon their records, together with the report as confirmed, showing how the said estimated expense has been apportioned upon the land ordered to be assessed as aforesaid. The county auditor, before placing the said assessment upon the duplicate, shall reduce or add to the same *pro rata*, the amount the actual expense shall be found to be, more or less than the said estimate. The said assessment upon lands, under the provisions of this act, shall be placed upon a special duplicate, to be provided by the county auditor at the expense of the county for that purpose; and such assessment shall constitute and be considered a first lien on the real estate assessed, in the same manner as other taxes are: *Provided,* That the cost and expense of the preliminary survey, proceedings, and report of said improvement shall be paid out of the county treasury, and be refunded, as well as all other amounts advanced by the county for the preliminary expenses of such improvement, in the manner hereinafter provided."

The bonds to create a fund for the prosecution and completion of the work and the payment of other expenses are issued under section 5097 of said statutes, as amended by the act approved February 27, 1883 (Elliott's Supp., section 1492), which section, so far as necessary for our consideration, is as follows: "For the purpose of raising the money necessary to meet the expenses of said improvement, the commissioners of the county are hereby authorized to issue the bonds of the county, maturing at annual intervals after two years, and not beyond eight years, bearing interest at the rate not to exceed six per cent. per annum, payable semi-an-

nually, which bonds shall not be sold for less than their par value; and said assessment shall be divided in such manner as to meet payment of principal and interest of said bonds, and so be placed upon the duplicate for taxation against the lands assessed, and collected in the same manner as other taxes.''

In this case the county auditor, to meet in part the amount due and to become due upon the bonds issued, provided a special duplicate for the year 1893, and placed upon said duplicate an assessment for $1,500 for taxation against the lands assessed.

Of the bonds issued, two, amounting to $1,000, will become due November 15, 1894; and the interest accruing on all said bonds, at and prior to said date, will be $700, making in all $1,700. The complaint shows that, to meet such obligation, the appellant treasurer has in his hands, as part proceeds of the sale of said bonds, over probable expenses of said work, the sum of $1,500, leaving two hundred dollars that should be collected from the assessment. A part of the assessment so shown to be due is owed, *pro rata*, by appellees, whose lands are assessed for the construction of the gravel road; but it does not appear that such part of the assessment so owed by appellees has been paid or tendered by them.

It has often been decided that mere irregularities in levying taxes or making assessments will not avoid their collection; and, also, that where any part of a tax or an assessment is due, that part must be paid, or at least offered to be paid, before suit will lie to enjoin the collection of the part alleged to be illegal. *City of Delphi* v. *Bowen*, 61 Ind. 29; *Foresman* v. *Chase*, 68 Ind. 500; *Mullikin* v. *Reeves, Treas.*, 71 Ind. 281; *Stilz* v. *City of Indianapolis*, 81 Ind. 582; *Volger* v. *Sidener*, 86 Ind. 545; *Miles, Treas.*, v. *Ray*, 100 Ind. 166; *Bothwell* v. *Millikan*, 104 Ind. 162.

The suit by appellees for injunction against the county treasurer was not, · therefore, well brought, unless it should appear that the county auditor had no authority whatever to place the assessment in question upon the special tax duplicate. The duplicate being put into the hands of the treasurer, and being legal on its face, was sufficient to justify the treasurer in collecting the assessments, unless it be shown that some essential requirement of the law was not observed in its preparation, or in the proceedings upon which its preparation was based. *Prima facie*, the duplicate is sufficient authority for the collection of the assessments. *Noland* v. *Busby*, 28 Ind. 154; *Rutherford* v. *Davis*, 95 Ind. 245; *Adams* v. *Davis*, 109 Ind. 10.

Neither would the injunction lie on account of the fact, if it should be one, that provision was made for collecting a part of the assessment before it was actually needed, for the payment of bonds or interest to become due. Those having charge of the collection of funds to meet the obligations of the county are required to use due diligence, and they must also be allowed the exercise of good judgment in providing in time for the payment of such obligations, so that the credit of the county may not be impaired. *Ricketts* v. *Spraker*, 77 Ind. 371.

The main, if not the sole, contention of counsel for appellees, however, is based upon the correct interpretation of the following paragraph from section 5097, R. S. 1881, as amended by section 1492, Elliott's Supp., already cited: "Said assessment shall be divided in such manner as to meet the payment of the principal and interest of said bonds, and so be placed upon the duplicate for taxation against the lands assessed, and collected in the same manner as other taxes." And the question to be decided is, Whose duty is it to make the division of

assessment here referred to, and to place the parts of the assessment so divided upon the special duplicate?

In this case the division was made, and the assessment placed upon the duplicate by the county auditor. It is not questioned that it was the auditor's duty to place the assessment upon the duplicate; but appellees contend that the division of the assessment should have been made by the board of county commissioners.

All the duties positively required of the county commissioners by the statute were performed. The assessment was duly made and apportioned upon the land; the contract for the work was let, and the bonds to obtain money for expenses were issued and sold. The commissioners also fixed the amounts of the bonds, the rate of interest, and the times when the several bonds and the interest should become due.

The statute then proceeds to direct that "said assessment shall be divided in such manner as to meet the payment of principal and interest of said bonds," and so be placed upon the tax duplicate. It would seem that the duty of thus dividing the assessment, so as to put an amount each year upon the duplicate sufficient to meet the bonds and interest as they mature, is a clerical duty. The statute itself, supplemented by the action of the commissioners, has positively fixed the amount to be raised in each instance to meet what shall become due. There is no discretion left, unless it be to make proper allowance for the uncertainty in the collection of delinquent assessments.

Indeed, in the next preceding section of the statute, section 5096, *supra,* a much greater power, and one requiring the exercise of good judgment and sound discretion, is placed in the hands of the auditor, where it is provided that "the county auditor, before placing the said assess-

Florer, Treasurer, *v.* McAffee *et al.*

ment upon the duplicate, shall reduce or add to the same, *pro rata*, the amount the actual expense shall be found to be, more or less than the said estimate."

Here the statute goes so far as to give the auditor power to revise the assessment as made by the commissioners. The duty exercised in both cases, however, is clerical or administrative, and not judicial; and the limits of the power in each case are fixed by the statute. In the first case, the auditor can change the assessment only by reducing or adding to it the difference between the actual and the estimated expense, which difference is shown by the figures in his office. In the second case, there is to be placed upon the duplicate such part of the whole assessment as will meet the amount of bonds and interest to fall due before the next collection of taxes; and for this, also, the figures are in the auditor's office.

Some latitude, too, must be given in both cases. In the first case, the precise amount of the expenses may not be known when the assessment is modified. In the second case, allowance must be made for whatever uncertainty there may be as to the collection of all assessments in time for the payments to be made on the bonds.

In both cases, also, there is no doubt that any abuse of authority is subject to revision by the courts.

In the case we are considering, if the auditor should place a greater part of the assessment upon the duplicate in any one year than is necessary or proper, any property owner assessed for the work, by paying in the correct amount due by him, and by showing that the excess is illegal, might have the collection of such excess restrained.

We think, therefore, that under the statute cited, it was the duty of the county auditor to divide the assessment made by the board of commissioners in this case, in such manner as to meet the payment of the principal

and interest of the bonds issued as they become due, and to place upon the special tax duplicate, for the year 1893, such part of the assessment as was necessary to meet the bonds and interest to become due November 15, 1894; and we do not find that there is anything shown in the record why the appellant should be enjoined from the collection of the assessment so placed upon the duplicate in his hands.

The judgment is reversed, with directions to sustain the demurrer to the complaint, and for further proceedings in accordance with this opinion.

